**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| GEL BLASTER, INC. F/K/A | § | |
| GEL BLASTER, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | No. 1:22-cv-00828-LY |
| | § | |
| HASBRO, INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |
| | § | |

## COMPLAINT

Gel Blaster, Inc., F/K/A Gel Blaster, LLC ("Gel Blaster" or "Plaintiff"), files this Complaint against Hasbro, Inc. ("Hasbro" or "Defendant"), showing this Court the following:

## SUMMARY OF THE COMPLAINT

1.     Gel Blaster is a local startup company.  In August 2021, Hasbro—the maker of NERF, and one of the largest toy companies in the world—flew its upper-level executives, including its now-President Eric Nyman, to Austin, Texas, where, at the home of Gel Blaster's founder, Hasbro agreed to the strategic terms of a deal to purchase a substantial stake in Gel Blaster and to develop products based on Gel Blaster innovations.  As put by one Hasbro executive two days after the meeting, Hasbro and Gel Blaster were working as one.  Based on that promise of a close relationship, Gel Blaster then provided Hasbro with full access to "everything and anything" that Hasbro requested for its due diligence pursuant to a Mutual Confidentiality Agreement.  And Hasbro requested a lot.  Hasbro was given access to Gel Blaster's most sensitive business information, including its computer-aided design drawings, product samples, its manufacturers and business partners, its financial statements, client information, and, as would become critical,

1

Gel Blaster's defenses and invalidity contentions for a series of patents owned by a Hasbro competitor, Spin Master, Inc. ("Spin Master").  In short, Gel Blaster was an open book to Hasbro.

2.     What's more, recognizing their joint interest in removing the Spin Master patents as a threat, Gel Blaster and Hasbro entered into a Common Interest Agreement.  And, under the Common Interest Agreement, Gel Blaster provided Hasbro with a complete roadmap to its legal strategy relating to the Spin Master patents, meeting multiple times with Hasbro's cadre of patent lawyers.  Hasbro agreed that the Spin Master patents were weak and that Gel Blaster possessed bona fide defenses to any patent claims that Spin Master could assert.  But Hasbro's lengthy negotiations with Gel Blaster and its detailed diligence process turned out to be nothing more than subterfuge for what was to come.

3.     In a glaring act of deception, bad faith, and betrayal, Hasbro secretly began a cynical corporate scam to unlawfully crush Gel Blaster.  Without ever withdrawing from the Common Interest Agreement, and thus still contractually required to work with Gel Blaster to jointly defeat the Spin Master patents, Hasbro surreptitiously went behind Gel Blaster's back to negotiate and ultimately acquire an exclusive license to the very same Spin Master patents.  But Hasbro didn't take a license merely to protect itself or Gel Blaster by removing the threat posed by those patents as required under the Common Interest Agreement.  To the contrary, Hasbro turned those patents into weapons by asserting them against its "partner" Gel Blaster by filing a Complaint in the United States International Trade Commission seeking to block the importation of Gel Blaster's products into the United States.  Hasbro's bad faith and unclean hands could not be more clear:  Hasbro induced Gel Blaster to hand over its claims and defenses to the Spin Master patents under a Common Interest Agreement, then, armed with Gel Blaster's playbook, it unlawfully acquired the Spin Master patents and asserted those patents to destroy Gel Blaster.

Hasbro's material and ongoing violation of its contracts, its use of Gel Blaster trade secrets and highly confidential information in developing new products, along with its intentionally tortious activity, must be stopped.  Gel Blaster thus brings this Complaint against Hasbro, seeking damages and injunctive relief preventing Hasbro from making further use of its confidential business information and trade secrets.

## I.  PARTIES

4.      Gel Blaster is a Texas corporation with its principal place of business at 5000 Plaza on the Lake, Suite 265, Austin, Texas 78746.

5.      Hasbro is a Rhode Island corporation with a principal place of business at 1027 Newport Avenue, Pawtucket, Rhode Island 02861.

## II.  JURISDICTION AND VENUE

6.      This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because Gel Blaster and Hasbro are citizens of different states and the amount in controversy in this lawsuit exceeds the sum or value of $75,000, excluding interest and costs.  This Court also has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction) because Gel Blaster is asserting a claim under the federal Defend Trade Secrets Act.

7.      This Court has personal jurisdiction over Hasbro pursuant to Federal Rule of Civil Procedure 4(k)(1)(A).  In addition, or in the alternative, this Court has specific personal jurisdiction over Hasbro consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.

8.      Hasbro entered into the contracts at issue in this lawsuit with Gel Blaster in the summer and fall of 2021 in Texas.  Extensive negotiations, including meetings between the parties, leading up to the contracts took place in Texas, and a significant portion of the parties' obligations have been performed or have occurred in and around Austin, Texas.  Additionally, on information

and belief, Hasbro intentionally markets and directs its business to this state and enjoys substantial income from sales and licensing in this state. Accordingly, Hasbro has established at least minimum contacts within Texas, and in this District in particular, and has purposefully availed itself of the benefits of conducting its activities in Texas and this District. Thus, the exercise of personal jurisdiction over Hasbro would not offend traditional notions of fair play and substantial justice.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2), (3) because the events or omissions giving rise to Gel Blaster's claims occurred in substantial part in this judicial district. In addition, Gel Blaster resides in this judicial district.

### III.   FACTUAL BACKGROUND

#### *Hasbro Approaches Gel Blaster Seeking a Business Partnership*

10. Colin Guinn founded Gel Blaster with the aim of getting kids off the couch and back into the backyard. Gel Blaster launched its first product on Kickstarter at the end of 2020, and, throughout 2021, Gel Blaster expanded its Austin-area team and began selling its products to small businesses across the country, on Amazon.com, and on its website.

11. Gel Blaster sells "blasters" that shoot water beads—which dissolve instantly on impact—multiple times per second. Gel Blaster's products are a marked improvement on paintball or foam-dart products: because the water-based ammunition disintegrates on contact, it leaves behind no stain, and there is no clean up.

12. Gel Blaster offers "blasters" for sale, including the Gel Blaster SURGE and the Gel Blaster STARFIRE.

13. In April 2021, Hasbro, maker of the popular NERF brand of foam-dart shooters, reached out to Gel Blaster to discuss doing business together. And, almost immediately, Gel

---

Blaster and Hasbro began discussing a joint go-to-market strategy, which they believed could, if they moved quickly enough, happen by the spring of 2022.

14.     The initial proposal was a licensing deal, whereby Hasbro would license the NERF trademark to Gel Blaster to place on the Gel Blaster SURGE.

15.     The parties continued their negotiations throughout the spring and into the fall of 2021.  As the negotiations progressed, Hasbro explored a deeper partnership with Gel Blaster than initially proposed.  Replacing the initial licensing proposal above, Hasbro proposed that Hasbro would instead license the Gel Blaster brand and go to market with the "NERF Gel Blaster."  In addition, Hasbro proposed acquiring a substantial equity stake in Gel Blaster.  As part of those discussions, Hasbro began to add more senior personnel to the discussion, including Adam Kleinman (Hasbro's Senior Vice President & General Manager, NERF & Sports Action) and Casey Collins (Hasbro's head of Licensed Consumer Products).

16.     Mr. Collins believed that Gel Blaster had created a "much better mousetrap."

17.     To further their negotiations, on August 20, 2021, Gel Blaster and Hasbro entered into a Mutual Confidentiality Agreement.

18.     The Confidentiality Agreement contemplated a potential business transaction between Gel Blaster and Hasbro, facilitated the exchange of confidential information to evaluate that contemplated transaction, and required that such information be used only for that purpose.

19.     Specifically, Gel Blaster and Hasbro agreed that the "Recipient of any Evaluation Material and Recipient's Representatives shall use the Evaluation Material solely for the purpose of evaluating a Possible Transaction and for no other purpose" and that "the Evaluation Material will be kept confidential and that the Recipient and the Recipient's Representatives will not disclose any of the Evaluation Material in any manner whatsoever."

20.     The Confidentiality Agreement contained a three-year term.

21.     In late August 2021, Hasbro's Chief Operating Officer (now its President) Eric Nyman and several other Hasbro representatives flew to Austin to meet with the Gel Blaster team and to work on the terms of a deal between the two companies. The Gel Blaster and Hasbro teams spent many hours drilling down on the key terms of a potential deal.

22.     The parties eventually reached the broad terms of a deal. Some of the final negotiations took place at Colin Guinn's home in Austin.

23.     During their weekend visit to Texas, the Hasbro team, including Eric Nyman and Casey Collins, attended a Gel Blaster party at the home of a Gel Blaster investor:



Mr. Collins is pictured in the blue shirt on the left, and Mr. Nyman is pictured in the black shirt on the right.

24.     On August 28, 2021, the Hasbro and Gel Blaster teams celebrated their new partnership by attending a dinner together at Uchiko, a Japanese restaurant in Austin. The restaurant created a commemorative menu for the event.

25.     On August 30, 2021, consistent with the deal terms struck in the face-to-face meetings in Austin, Hasbro set out the terms of a potential equity-purchase deal in a "Term Sheet." In a letter from Eric Nyman, Chief Operating Officer of Hasbro, to Colin Guinn, Chief Executive Officer of Gel Blaster, Hasbro explained that Gel Blaster "has agreed to make available, and Hasbro has agreed to review, certain information of [Gel Blaster] to allow Hasbro to evaluate whether or not it intends to exercise an option to enter into a long-form binding agreement with [Gel Blaster] reflecting the deal terms contemplated in the [Term Sheet] (as attached hereto)."

26.     The proposed principal deal terms included a payment by Hasbro to Gel Blaster in exchange for a significant equity stake in Gel Blaster (and corresponding representation on any Gel Blaster board of directors).

27.     The Term Sheet also contained provisions relating to licensed property, royalties, and marketing commitments.

28.     Two days after Gel Blaster and Hasbro set out the strategic framework of a deal, in an email to the core members of the Gel Blaster and Hasbro teams, Eric Listenberger (Hasbro's Vice President for Product Development) was unequivocal:  Gel Blaster and Hasbro were working as one:

| | |
|---|---|
| **From:** | Listenberger, Eric <Eric.Listenberger@hasbro.com> |
| **Sent:** | Wednesday, September 1, 2021 5:23 PM |
| **To:** | Listenberger, Eric; Bognanno, Pete; Kleinman, Adam; colin@gelblaster.com; Luca Schnetzler; Peyton Healey; Carosotto, Kristin; Weinberg, Jeremy; Dunn, Maggie; Dube, Rob; Tino, Nick; Borowiec, Jacob; Steve Starobinsky; peter@bureaux.us; Eric@gelblaster.com; colin@guinnpartners.com; Listenberger, Eric |
| **Subject:** | MEETING NOTES: Introductions & Info share |

Thanks everyone.  This is shaping up to be a killer partnership.

Here are the follow up notes. I agree wholeheartedly with Colin's statement that "we are one team now!".  That said for clarity of notes below I have referred to Hasbro core team a few time.

File sharing to be done through Hasbro Blast.  I'll send you a link to connect.
Please copy *core Hasbro team* on the file share for now. This will make it easier for everyone to keep up to speed on the latest.
*Core Hasbro members*:
@Bognanno, Pete
@Tino, Nick
@Dunn, Maggie
@Dube, Rob
@Borowiec, Jacob
@Carosotto, Kristin
@Listenberger, Eric
@Kleinman, Adam

29.     Meanwhile, during the parties' negotiations, Hasbro identified certain patents held by Spin Master that it believed were relevant to Gel Blaster's products.

30.     The Term Sheet contained a provision that addressed any intellectual-property claims.  One million dollars of the proposed purchase price was to be set aside in escrow for the resolution of legal proceedings relating to intellectual-property issues.  Any Spin Master-related legal proceedings on intellectual-property claims would be covered by this provision of the Term Sheet.

31.     To further their discussion of the Spin Master patents, in September 2021, Gel Blaster and Hasbro entered into a Common Interest Agreement.

32.     The Common Interest Agreement set out the mutual interest that Gel Blaster and Hasbro shared in navigating certain patents held by Spin Master as they attempted to go to market on their business venture.

33.     The Common Interest Agreement explained: (1) that the parties believed that they had solid defenses to any potential patent claim that Spin Master could bring; and (2) that the parties had a common interest in proving that there was no infringement and that the Spin Master Patents were invalid.

2.     **Background and Purpose**

Hasbro is aware of the following patents owned by Spin Master ("SM"), which Hasbro believes are relevant to certain products it may bring to market under the Trademark License between the Parties dated August 30, 2021:

- U.S. Patent No. 8,371,282 (the "'282 Patent");
- U.S. Patent No. 8,596,255 (the "'255 Patent"); and
- U.S. Patent No. 8,640,683 (the "'683 Patent")

(collectively, the "SM Patents").

Each Party believes that it has a bona fide defense to any potential patent claims asserted by SM. The Parties have common legal interests in proving that the SM Patents are not infringed, invalid and/or otherwise unenforceable, and in proving that SM's potential claims are otherwise subject to various defenses.

34.     The Common Interest Agreement's purpose was to allow Gel Blaster and Hasbro to share the costs of pursuing joint claims or defenses relating to the Spin Master patents, to share privileged information necessary to assert or defend against any such claims, and to coordinate the defense or prosecution of any legal action relating to the Spin Master patents.

35.     The Common Interest Agreement was effective as of August 1, 2021.

36.     The Common Interest Agreement had a six-year term and set out detailed provisions regarding a party's withdrawal from the agreement.

37.     Finally, the Common Interest Agreement provided that a party had a duty to withdraw if it believed that there was no longer a mutuality of interest between the parties.  As of the date of this Complaint, Hasbro has not withdrawn from the Agreement.

***Gel Blaster Provides Hasbro with "Everything and Anything"***

38.     Believing that Hasbro in good faith was working to enter into a significant business relationship with Gel Blaster, and believing that it was operating under the protections of both the Confidentiality Agreement and the Common Interest Agreement, Gel Blaster provided "everything and anything" to Hasbro in connection with its due-diligence efforts, including its marketing efforts and business plans, product designs and specifications, client information, and Gel Blaster's legal arguments, positions, and theories regarding potential accusations of infringement and invalidity defenses regarding the Spin Master patents.

*The Walmart Opportunity*

39.     During the discussions with Hasbro relating to its proposed joint strategy, Gel Blaster was able to arrange a meeting with Walmart to discuss placing Gel Blaster's current products into Walmart's stores.  Although the meeting was obtained by Gel Blaster and with a purpose to only discuss Gel Blaster products, Hasbro requested, and Gel Blaster agreed, that Hasbro could join the meeting with Walmart.  That Gel Blaster welcomed Hasbro's participation in that meeting with Walmart reflected the level of trust that had developed between the two companies.

40.     Hasbro attended Gel Blaster's meeting with Walmart, pitching a joint product called the "NERF Gel Blaster" to Walmart.

41.     While Hasbro has a substantial placement of product at Walmart, on information and belief, it typically sells into the toy aisle of the store.  Gel Blaster was seeking to place its products into the sporting goods section of the store, and was in discussions with the sporting goods buyer, with whom the meeting was set.  Accordingly, on information and belief, Hasbro's access to this meeting was another valuable benefit of its relationship with Gel Blaster.

42.     The product was favorably received by Walmart, and, indeed, Walmart's primary concern was whether Gel Blaster/Hasbro would be able to produce enough supply given the expected demand in the upcoming year.  When the call concluded, the Hasbro representatives indicated to Gel Blaster that they had never experienced a call with a Walmart buyer that went so well.

43.     Hasbro thus learned the extent of the demand for a water-bead blaster, *i.e.* the "size of the prize."

*Gel Blaster Product Specifications*

44.     Gel Blaster's engineers worked hand-in-hand with Hasbro's engineers to educate Hasbro on exactly how to make a water-bead blaster.

45.     Gel Blaster's engineers and team members shared the Gel Blaster SURGE's circuit-board information, including specially developed features included in the newest edition of the SURGE, such as selection between semi- and fully-automatic modes.  Gel Blaster's engineers fully educated Hasbro's engineers on exactly how to make a water-bead shooter, including providing the Hasbro engineers with many of the lessons that Gel Blaster had learned in the marketplace to date.  This generous sharing of information by Gel Blaster was under the terms of the Confidentiality Agreement.

46.     To enable Hasbro to carry out product testing, Hasbro requested, and Gel Blaster agreed to provide Hasbro with 57 full product samples, 2 master cartons of full product samples, 225 battery cells, and 79 battery packs.

47.     Gel Blaster also allowed Hasbro to visit Gel Blaster's manufacturer, Yi Jin Electronics Science, in China.

48.     By obtaining access to Gel Blaster's manufacturer, Hasbro was provided with confidential vendor information.

### *The Spin Master Patents*

49.     On or around August 24, 2021, Gel Blaster's legal team and Hasbro's legal team joined a video call to discuss Gel Blaster's thoughts and defenses regarding the Spin Master patents.  Gel Blaster freely—and appropriately, given that the Confidentiality Agreement was already in place—shared any and all information that Hasbro requested.

50.     The discussions continued and, as discussed above, led the parties to execute the Common Interest Agreement.

51.     The day after the Common Interest Agreement was executed, on September 28, 2022, Gel Blaster and Hasbro (and their attorneys) had a privileged common-interest discussion.



## Gel Blaster-Hasbro Common Interest Privilege Discussion

Created by: peyton@gelblaster.com  ·  Your response: ✓Yes, I'm going

**Time**
2pm - 3pm (Eastern Time - New York)

**Date**
Tue Sep 28, 2021

**Where**
Microsoft Teams Meeting

**Description**
Extending the call to 60 minutes.

Guests
- ✓ Peyton Healey
- adam.kleinman@hasbro.com
- Colin Guinn
- jacob.schneider@hklaw.com
- jburnette@marshallip.com
- joshua.krumholz@hklaw.com
- pamela.wingood@hasbro.com
- peter@ntiplaw.com
- rxb@jmbm.com
- bcs@jmbm.com
- catherine.reynolds@hklaw.com
- colin@guinnpartners.com
- deborah.uluer@hasbro.com
- mweiner@marshallip.com

52.     Colin Guinn and Adam Kleinman exchanged numerous telephone calls and text messages regarding the strengths and weaknesses of the Spin Master patents.

53.     Hasbro has not—to date—withdrawn from the Common Interest Agreement.

***Hasbro and Gel Blaster Decide not to Complete a Definitive Transaction.***

54.     Hasbro eventually notified Gel Blaster that it did not want to go forward with the proposed terms set forth in the Term Sheet.  Hasbro made a new proposal, which Gel Blaster declined.

55.     Although the parties were unable to complete the agreement, the parting seemed amicable to Gel Blaster.  Adam Kleinman proposed that the parties should re-group after six to nine months, as the relationship might be riper at that time.

56.     Eric Nyman indicated that Gel Blaster had introduced Hasbro to a new and exciting opportunity and, although the parties would not be in partnership, that he liked to take care of people that he had met along the journey.

57.     Continuing to cultivate a feeling of friendship and trust, Eric Nyman told Gel Blaster's founder to keep sending new inventions to Hasbro.  That is what would make what comes next so troubling.

***Hasbro Becomes the Exclusive Licensee of the Same Patents It Worked with Gel Blaster to Set Aside, Then Immediately Asserts Them Against Gel Blaster in Material Violation of Its Contracts.***

58.     To Gel Blaster's complete shock and surprise, on July 20, 2022, Hasbro and Spin Master, as Complainants, filed a Complaint in the ITC, captioned *In the Matter of Certain Soft Projectile Launching Devices, Components Thereof, Ammunition, and Products Containing Same*, Docket No. 3629, against Gel Blaster and others, including Gel Blaster's manufacturer, Yi Jin Electronics Science.

59.     In the ITC Complaint, Hasbro alleged that it acquired an exclusive license to U.S. Patent Nos. 8,371,282 ("the '282 patent") and 8,640,683 ("the '683 patent") from Spin Master—two of the same patents that were identified in the Common Interest Agreement between Gel

Blaster and Hasbro.  Hasbro is therefore now seeking to enforce against Gel Blaster the very same Spin Master patents that it has previously worked hand in hand with Gel Blaster to invalidate.

60.     Without any knowledge by Gel Blaster, Hasbro either acquired that exclusive license: (1) only *after* it obtained detailed information regarding Gel Blaster's products including its engineering process and computer-aided designs; *after* it obtained confidential information relating to Gel Blaster's potential business opportunity with Walmart; *after* it agreed that Gel Blaster had a bona fide defense to any patent claims involving the Spin Master patents; and *after* it obtained substantially all of Gel Blaster's theories, claims, and defenses related to the Spin Master patents, or (2) *before* or *during* its solicitation of all of the above Gel Blaster information. On information and belief, either one of these possibilities represents a gross deception and betrayal of Gel Blaster perpetrated by Hasbro.

61.     According to the ITC Complaint, the '282 patent is directed to ammunition for a projectile-launching device made from hydrated super-absorbent polymers, and the '683 patent is directed to a projectile-launching system that includes ammunition from hydrated super-absorbent polymers.

62.     The ITC Complaint further alleges that Gel Blaster (and additional proposed respondents) import into the United States certain "soft projectile launching devices, components thereof, ammunition, and products containing same" that infringe the Spin Master patents.

63.     Complainants seek a permanent limited exclusion order, excluding from entry into the United States products that infringe the Spin Master patents, including Gel Blaster's products which are manufactured in China, and a cease and desist order against Gel Blaster's inventory of products in the United States.

64.     Adam Kleinman—who was intimately involved in the due-diligence and common-interest discussions with Gel Blaster regarding Gel Blaster's business and the Spin Master patents—verified the ITC Complaint on behalf of Hasbro.

65.     And, finally, after filing the ITC Complaint, Hasbro continued its bad-faith and anticompetitive campaign to stamp out Gel Blaster's business.

66.     Hasbro started informing merchants of the ITC Complaint and the infringement allegations contained therein.

67.     Specifically, Hasbro informed Costco of the ITC Complaint.  Costco was a prospective Gel Blaster customer and had expressed strong interest in Gel Blaster's products.

68.     Upon information and belief, Hasbro has informed additional current and prospective Gel Blaster customers of the ITC Complaint.

## IV. CAUSES OF ACTION

### Count I – Breach of Contract (Confidentiality Agreement)

69.     Gel Blaster restates and incorporates by reference herein the allegations set forth above.

70.     On August 20, 2021, Gel Blaster and Hasbro executed the Confidentiality Agreement, a valid and enforceable written contract.

71.     The Confidentiality Agreement provides, among other things, that the "Recipient of any Evaluation Material and Recipient's Representatives shall use the Evaluation Material solely for the purpose of evaluating a Possible Transaction and for no other purpose" and that "the Evaluation Material will be kept confidential and that the Recipient and the Recipient's Representatives will not disclose any of the Evaluation Material in any manner whatsoever."

72.     "Evaluation Material" is defined as "any information concerning the Disclosing Party (whether prepared by the Disclosing Party, its Representatives or otherwise and irrespective

of the form of communication) which is furnished to the Recipient or the Recipient's Representative now or in the future by or on behalf of the Disclosing Party."  The term further includes "all notes, analyses, compilations, studies, interpretations or other documents prepared by the Recipient or the Recipient's Representative to the extent that they contain, reflect or are based upon, in whole or in part, the information furnished to the Recipient or the Recipient's Representatives pursuant hereto."

73.     The Confidentiality Agreement further provides that the recipient of Evaluation Material "will continue to be bound by the obligations of confidentiality and other obligations hereunder," notwithstanding if either party decides not to proceed with a Possible Transaction.

74.     Further, the Confidentiality Agreement acknowledges that Gel Blaster and Hasbro may provide products or services that are competitive to each other and are not limited from doing so, "provided [the parties] do not use the Evaluation Material in breach of this agreement."

75.     Gel Blaster has fully performed its contractual obligations under the Confidentiality Agreement.  Among other things, Gel Blaster has maintained the confidentiality of any Evaluation Material shared by or with Hasbro.

76.     On information and belief, Hasbro, on the other hand, breached the Confidentiality Agreement by utilizing Gel Blaster's confidential information and trade secrets—including its financial, legal, and technical information, which constitute "Evaluation Material" under the Confidentiality Agreement—for a purpose other than evaluating a Possible Transaction, including to obtain exclusive licensing rights to certain patents held by Spin Master and to bring claims against Gel Blaster for purported infringement of those patents.

77.     Hasbro's breach of the Confidentiality Agreement has caused injury to Gel Blaster. The Confidentiality Agreement acknowledges that "money damages would not be a sufficient

remedy for any breach" of this agreement, and explicitly provides that parties shall be entitled to equitable relief, including an injunction, in addition to any other remedy available at law or equity.

78.     The Confidentiality Agreement further provides for reimbursement of reasonable legal fees to a party that prevails in litigation asserting breach of the agreement.  Gel Blaster seeks actual damages, as well as injunctive relief and attorneys' fees.

79.     All conditions precedent to Gel Blaster's claim for breach of the Confidentiality Agreement as set forth in this Complaint have been performed, have occurred, or have been waived.

### Count II – Breach of Contract (Common Interest Agreement)

80.     Gel Blaster restates and incorporates by reference herein the allegations set forth above.

81.     On September 27 and 28, 2021, Gel Blaster and Hasbro executed the Common Interest Agreement, a valid and enforceable written contract made effective as of August 1, 2021.

82.     The Common Interest Agreement provides, among other things, that Gel Blaster and Hasbro each "believes that it has a bona fide defense to any potential patent claims asserted by [Spin Master].  The Parties have common legal interests in proving that the [Spin Master] Patents are not infringed, invalid and/or otherwise unenforceable, and in proving that [Spin Master's] potential claims are otherwise subject to various defenses."

83.     The Common Interest Agreement provides for confidentiality and nondisclosure of common interest materials:

> Common Interest Materials shall be kept and remain confidential under the Common Interest Privileges under the terms of this Agreement, shall not be disclosed to anyone except employees, agents, and outside counsel of (i) the Parties and (ii) their related corporate entities who need to know the information to defend against the SM Patents or Related Patents (who shall each then be bound to preserve such confidences in the same manner as each Party), and shall be used only for such

purpose, unless each of the Parties has provided express consent for the disclosure of Common Interest Materials to individuals other than those previously listed.

84.     The Common Interest Agreement goes on to state that "Common Interest Materials shall continue to be held confidential and subject to the Common Interest Privileges and all other applicable privileges and protections even if an adversity of interest may subsequently be discerned or arise between or among them."

85.     While the Common Interest Agreement acknowledges that conflicts of interest between the parties may arise, it requires "that the Parties at all times comply with the obligations set forth in this Agreement to maintain the privileged and/or confidential nature of the Common Interest Materials."

86.     The Common Interest Agreement further provides that each party "has a duty to withdraw from the Agreement if, in good faith, the Party or counsel reasonably believes there is no longer any mutuality of interest between or among that Party and the other Parties to this Agreement."

87.     As of the date of filing of this Complaint, Hasbro has not withdrawn from the Common Interest Agreement.  Gel Blaster has fully performed its contractual obligations under the Common Interest Agreement.  Gel Blaster provided Hasbro with Gel Blaster's legal arguments, positions, and theories regarding potential accusations of infringement and invalidity defenses regarding the Spin Master patents.

88.     Hasbro, on the other hand, breached the Common Interest Agreement by utilizing confidential and privileged information provided by Gel Blaster to Hasbro pursuant to this agreement for purposes other than "to defend against the SM Patents or Related Patents."  On information and belief, Hasbro utilized Common Interest Materials provided by Gel Blaster to

obtain exclusive licensing rights to the same Spin Master patents at issue in the Common Interest Agreement and / or to bring claims against Gel Blaster for purported infringement of those patents.

89.     Hasbro's breach of the Common Interest Agreement has caused injury to Gel Blaster.

90.     The Common Interest Agreement acknowledges that any breach thereof, "such as, for example, an actual or threatened imminent disclosure of Common Interest Materials in violation of the terms of this Agreement, may not be adequately remedied by damages.  Therefore, it is agreed that injunctive relief (temporary, preliminary, and permanent) to enforce specifically the terms of this Agreement may be necessary and appropriate in the event of any such actual or proposed breach." Gel Blaster seeks actual damages, as well as injunctive relief and attorneys' fees.

91.     All conditions precedent to Gel Blaster's claim for breach of the Common Interest Agreement as set forth in this Complaint have been performed, have occurred, or have been waived.

92.     Gel Blaster further is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code Chapter 38 because this suit is for breach of a written contract as defined by Texas Civil Practice & Remedies Code § 130.001.

**Count III – Texas Uniform Trade Secret Act**

93.     Gel Blaster restates and incorporates by reference herein the allegations set forth above.

94.     Gel Blaster is in the business of developing and selling "blaster" products that shoot specially-designed water beads.  It possesses trade secrets that include, among others, its product designs and specifications, financial information, client information, and business plans, all of

which are extremely valuable to Gel Blaster in the marketplace.  Gel Blaster has a right to enforce and protect those trade secrets.

95.     Gel Blaster made a reasonable effort to keep that information secret, including through the execution of the Common Interest Agreement and the Confidentiality Agreement with Hasbro.  The information is generally unknown to and not readily ascertainable through proper means by third parties.

96.     Hasbro misappropriated Gel Blaster's trade secrets by disclosing and/or using them without Gel Blaster's consent.  On information and belief, Hasbro has used and is utilizing the confidential product designs and specifications, financial information, client information, and business plans, to pursue the ITC complaint against Gel Blaster, all in an effort to prohibit Gel Blaster from importing its products into the United States and to gain significant business advantage for Hasbro.  On information and belief, Hasbro further has used and is utilizing these same trade secrets to develop and sell its competitive products, the NERF Pro GelFire blaster product line.

97.     Hasbro knew and / or had reason to know that the trade secrets were derived by improper means through breach of Hasbro's duty to maintain secrecy.

98.     Hasbro's misappropriation of Gel Blaster's trade secrets has caused and is causing injury to Gel Blaster.  Gel Blaster seeks damages for its actual losses and Hasbro's unjust enrichment.  In the alternative, Gel Blaster seeks damages as measured by imposition of a reasonable royalty for Hasbro's use of its trade secrets.

99.     Gel Blaster's injury resulted from Hasbro's willful and malicious misappropriation of Gel Blaster's trade secrets, which entitles Gel Blaster to exemplary damages under Tex. Civ.

Prac. & Rem. Code § 134A.004(b) and to reasonable attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.005.

<strong>Count IV – Federal Defend Trade Secret Act</strong>

100.    Gel Blaster restates and incorporates by reference herein the allegations set forth above.

101.    Gel Blaster is in the business of developing and selling toy "blaster" products that shoot specially-designed water beads.  It possesses trade secrets that include, among others, its product designs and specifications, financial information, client information, and business plans, all of which are valuable in the marketplace.  Gel Blaster has a right to enforce and protect those trade secrets.

102.    Gel Blaster made a reasonable effort to keep that information secret, including through the execution of the Common Interest Agreement and Confidentiality Agreement with Hasbro.  The information is generally unknown to and not readily ascertainable through proper means by third parties.

103.    Hasbro misappropriated Gel Blaster's trade secrets by disclosing and/or using them without Gel Blaster's consent.  On information and belief, Hasbro has used and is utilizing the confidential product designs and specifications, financial information, client information and business plans to pursue the ITC complaint against Gel Blaster, all in an effort to prohibit Gel Blaster from importing its products into the United States and to gain significant business advantage for Hasbro.  On information and belief, Hasbro further has used and is utilizing these same trade secrets to develop and sell its competitive products, the NERF Pro GelFire blaster product line.

104.    Hasbro knew and / or had reason to know that the trade secrets were derived by improper means through breach of Hasbro's duty to maintain secrecy.

105.    Gel Blaster's products—which are the subject of the ITC complaint that Hasbro misappropriated Gel Blaster's trade secrets to pursue—are sold in interstate commerce.  Further, on information and belief, Hasbro's contemplated product for which it has misappropriated Gel Blaster's trade secrets, the NERF Pro GelFire blaster, including the NERF Pro GelFire Mythic Blaster, will be sold in interstate commerce.

106.    Hasbro's misappropriation of Gel Blaster's trade secrets has caused and is causing injury to Gel Blaster.  Gel Blaster seeks damages for its actual losses and Hasbro's unjust enrichment.  In the alternative, Gel Blaster seeks damages as measured by imposition of a reasonable royalty for Hasbro's use of its trade secrets.

**Count V – Tortious Interference with Current and Prospective Business Relations**

107.    Gel Blaster restates and incorporates by reference herein the allegations set forth above.

108.    After Hasbro filed the ITC Complaint, Hasbro's misconduct did not stop.  Hasbro began informing merchants of its bad-faith allegations of patent infringement.  Hasbro informed Costco of the ITC Complaint and, upon information and belief, informed other current and prospective Gel Blaster customers of its allegations of patent infringement against Gel Blaster.

109.    Hasbro knew of Gel Blaster's business relationships with those merchants based on its intimate knowledge of Gel Blaster's business gained from the detailed due-diligence that it conducted while considering whether to enter into a business partnership with Gel Blaster.

110.    Hasbro intentionally interfered with those relationships by, among other things, informing Gel Blaster's customers of Hasbro's bad-faith allegations of patent infringement.

111.    Hasbro's actions were independently unlawful because they breached the contracts between Hasbro and Gel Blaster and violated the Texas Uniform Trade Secrets Act and federal Defend Trade Secrets Act.

112.    Hasbro's interference proximately caused injury to Gel Blaster, which resulted in damages.

113.    Gel Blaster's injury resulted from Hasbro's gross negligence, malice, or actual fraud, which entitles Gel Blaster to exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a).

## Count VI – Injunctive Relief

114.    Gel Blaster restates and incorporates by reference herein the allegations set forth above.

115.    Gel Blaster is likely to succeed on the merits of its claims for breach of the Confidentiality Agreement and Common Interest Agreement, and violation of the Texas Uniform Trade Secrets Act and the federal Defend Trade Secrets Act.

116.    The imminent threat of disclosure and misuse of Gel Blaster's privileged information and confidential trade secrets cannot be remedied solely by monetary damages, and therefore constitutes a substantial threat of irreparable injury.

117.    The threat of disclosure and misuse of Gel Blaster's privileged information and confidential trade secrets outweighs the harm of an injunction.

118.    An injunction will not disserve the public interest.

## V.  DEMAND FOR JURY TRIAL

119.    Gel Blaster demands a jury trial for all claims entitled to a jury trial.

## VI. PRAYER

WHEREFORE, Gel Blaster respectfully prays and requests that the Court enter Judgment in favor of Gel Blaster and against Hasbro, that:

1.    Defendant Hasbro is liable to Gel Blaster for damages that Gel Blaster has incurred as a result of Hasbro's misappropriation of Gel Blaster's trade secrets in violation

of the Texas Uniform Trade Secret Act and the Defend Trade Secrets Act, tortious interference, and breaches of the Common Interest Agreement and Confidentiality Agreement, including but not limited to:

    a.  Actual damages, including but not limited to lost profits and/or disgorgement;

    b.  Exemplary damages;

    c.  Attorneys' fees;

    d.  Court costs;

    e.  Pre- and post-judgment interest; and

    f.  All other relief, in law or in equity, to which Gel Blaster may be justly entitled;

2.    Defendant Hasbro is enjoined from any further use of Plaintiff Gel Blaster's privileged information and confidential trade secrets;

3.    All other relief, in law or in equity, to which Gel Blaster may be justly entitled.

Date:   August 16, 2022                    Respectfully submitted,


                                            /s/William C. Petit
                                            William C. Petit
                                            Attorney-In-Charge
                                            Texas Bar No. 24042289
                                            Federal ID No. 695469
                                            KELLEY DRYE & WARREN LLP
                                            515 Post Oak Blvd., Suite 900
                                            Houston, Texas 77027
                                            Telephone: (713) 355-5000
                                            Facsimile: (713) 355-5001
                                            wpetit@KelleyDrye.com

                                            OF COUNSEL:

                                            Scott W. Doyle (*pro hac vice* forthcoming)
                                            KELLY DRYE & WARREN LLP
                                            3050 K Street NW, Suite 400
                                            Washington, DC  20007
                                            Tel: (202) 342-8845
                                            sdoyle@kelleydrye.com

                                            Lana M. Rowenko (*admission application forthcoming*)
                                            State Bar No. 24094929
                                            KELLEY DRYE & WARREN LLP
                                            515 Post Oak Blvd., Suite 900
                                            Houston, Texas 77027
                                            Telephone:  (713) 355-5000
                                            Facsimile:  (713) 355-5001
                                            lrowenko@kelleydrye.com

                                            **ATTORNEYS FOR PLAINTIFF**
                                            **PLAINTIFF GEL BLASTER, INC.**