**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **GEL BLASTER, INC. F/K/A**<br>**GEL BLASTER, LLC,**<br><br>       **Plaintiff, Counter-Defendant**<br><br>   **v.**<br><br>**HASBRO, INC.**<br><br>       **Defendant, Counter-Plaintiff** | **Civil Action No. 1:22-cv-00828-LY**<br><br>**JURY TRIAL REQUESTED** |

## HASBRO'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO GEL BLASTER'S ORIGINAL COMPLAINT

Hasbro, Inc. ("Hasbro") hereby asserts counter-claims for patent infringement, trademark infringement, and unfair competition against Counter-Defendant Gel Blaster Inc. ("Gel Blaster") and files its Answer to Gel Blaster's Complaint.

At its core, Gel Blaster's complaint against Hasbro stems from the fact that Hasbro chose to license two duly issued patents rather than willfully infringe them. Hasbro does not deny that it met with Gel Blaster to discuss an investment or partnership in 2021, but that deal fell apart because another company (Spin Master) already owned foundational patents covering SAP blaster technology. Hasbro tried to make a deal work, but simply could not because of patents that Gel Blaster should have known about, but about which it never informed Hasbro. Ultimately, Hasbro gave Gel Blaster written notice in November 2021 that their relationship was over, which ended the parties' Common Interest Agreement. Months after parting ways with Gel Blaster, Hasbro obtained a license for the patents from Spin Master so that it could enter the market with its own internally developed and IP-licensed product.

1

Hasbro, with this license and with its decades of experience in making NERF blasters, developed its own blaster (the NERF Pro GelFire Mythic) that practices the exclusively licensed patented inventions.  In addition, relying on public information, Hasbro and patent owner Spin Master requested an investigation by the United States International Trade Commission (ITC) of ten companies, including Gel Blaster, who import products that infringe the patents.  The ITC granted Hasbro and Spin Master's request and has started its investigation.

Meanwhile, in addition to its patent infringement, Gel Blaster now appears to have started using the world-famous NERF trademark to advertise its products, misleading consumers who are searching for Hasbro's blaster.  The following picture shows an example of how a user searching for "nerf pro gelfire" would see a Gel Blaster advertisement that prominently uses Hasbro's trademarks in the advertising text, with a link that initially appears to be about the NERF Pro GelFire, but which takes consumers instead to Gel Blaster's website:



Defendant Hasbro, Inc. therefore files this Answer and Counterclaims to the Complaint filed by Plaintiff Gel Blaster, Inc., F/K/A Gel Blaster, LLC.  The numbered paragraphs in this Answer correspond to the like-numbered paragraphs of the Complaint, to the extent applicable. Hasbro denies all allegations and characterizations except those specifically admitted.

## ANSWER

### SUMMARY OF THE COMPLAINT

1.      Hasbro admits that it is the maker of NERF and one of the largest and most successful toy brands in the world, that Hasbro executives flew to Austin in August 2021 to discuss a deal to purchase a stake in Gel Blaster, that it entered into a Mutual Confidentiality Agreement with Gel Blaster, and that Gel Blaster provided certain information and documents to Hasbro. Hasbro denies the remaining allegations of this paragraph of the complaint.

2.      Hasbro admits it entered into a Common Interest Agreement with Gel Blaster. Hasbro denies the remaining allegations of this paragraph of the complaint.

3.      Hasbro admits that it is the exclusive licensee of the Spin Master patents, that Hasbro was one of the Complainants who filed an action at the United States International Trade Commission against ten named Respondents including Gel Blaster, and that Complainants are seeking an exclusion order as to Gel Blaster's products that infringe two asserted U.S. patents. Hasbro denies the remaining allegations of this paragraph of the complaint.

### I.  PARTIES

4.      Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

5.      Admitted.

## II.  JURISDICTION AND VENUE

6.      Hasbro admits that Gel Blaster and Hasbro are citizens of different states.  Hasbro denies that diversity jurisdiction is proper as Gel Blaster has not pled any basis in law or fact to show the controversy in the lawsuit exceeds $75,000.  Hasbro admits that this Court has subject matter jurisdiction of this case under 28 U.S.C. §§ 1331 as to the purported claim arising under the Federal Defend Trade Secrets Act, and supplemental jurisdiction as to the remaining claims.

7.      Hasbro admits that this Court has specific personal jurisdiction over it.  Hasbro denies the remaining allegations of this paragraph of the complaint.

8.      Hasbro admits that negotiations took place in Texas and that Hasbro intentionally directs business to Texas and derives income from sales in Texas.  Hasbro denies the remaining allegations of this paragraph of the complaint.

9.      Hasbro admits that certain events set forth in Gel Blaster's complaint occurred in Austin, TX.  Hasbro lacks knowledge or information sufficient to form a belief about the truth as to whether Gel Blaster resides in this judicial district.  Hasbro denies the remaining allegations of this paragraph of the complaint.

## III.  FACTUAL BACKGROUND

### *Hasbro [Allegedly] Approaches Gel Blaster Seeking a Business Partnership*

10.      Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

11.      Hasbro admits that Gel Blaster sells blasters, but denies the rest of first sentence because these blasters shoot soft projectiles formed from hydrated super absorbent polymer (SAP) that do not dissolve instantly on impact.  Hasbro denies the remaining allegations of this paragraph of the complaint.

12.     Hasbro admits that Gel Blaster sells blasters, including the SURGE and STARFIRE products.

13.     Hasbro denies that this paragraph accurately characterizes the discussions in the stated time period.

14.     Admitted.

15.     Hasbro denies that this paragraph accurately characterizes the negotiations in the stated time period.

16.     Denied.

17.     Admitted.

18.     Hasbro denies this allegation accurately describes the Mutual Confidentiality Agreement.

19.     Hasbro admits the agreement contains this language.  Hasbro denies the remaining allegations of this paragraph of the complaint.

20.     Admitted.

21.     Hasbro admits that several Hasbro representatives travelled to Austin to meet with Gel Blaster.  Hasbro denies the remaining allegations in this paragraph.

22.     Hasbro admits that it the parties exchanged "non-binding" terms for a possible deal. Hasbro admits that it engaged in negotiations at the home of a person related to Gel Blaster. Hasbro denies the remaining allegations in this paragraph.

23.     Hasbro admits that Hasbro representatives attended a party the home of a person related to Gel Blaster.   Hasbro admits that the picture below paragraph 23 appears to be a photograph from that event.  Hasbro denies the remaining allegations in this paragraph.

24.     Hasbro denies that any legal "partnership" existed between Hasbro and Gel Blaster on August 28, 2021.  Hasbro admits that the Hasbro and Gel Blaster teams ate a meal at a restaurant called Uchiko.  Hasbro denies the remaining allegations in this paragraph.

25.     Hasbro denies that the quoted language matches the language set forth in the August 30, 2021 letter from Eric Nyman to Colin Guinn.  Hasbro denies the remaining allegations in this paragraph.

26.     Hasbro admits that the proposed non-binding deal terms included a payment by Hasbro to Gel Blaster, an equity stake in Gel Blaster, and representation on any Gel Blaster board of directors.  Hasbro denies the remaining allegations of this paragraph of the complaint.

27.     Hasbro admits that the proposed non-binding deal terms included provisions related to licensed property, royalties, and marketing.  Hasbro denies the remaining allegations in this paragraph.

28.     Hasbro admits Mr. Listenberger sent the pictured email.  Hasbro denies the remaining allegations of this paragraph of the complaint.

29.     Hasbro admits that "during the parties' negotiations, Hasbro identified certain patents held by Spin Master that it believed were relevant to Gel Blaster's products."  Hasbro denies any timing implied by the "Meanwhile" statement in the allegation and placement.

30.     Hasbro admits the non-binding proposed term sheet provided that $1 million would be set aside in escrow to resolve legal proceedings.  Hasbro denies the remaining allegations of this paragraph of the complaint.

31.     Admitted.

32.     Denied.

33.     Hasbro denies the characterization of the Common Interest Agreement.   The agreement text speaks for itself.  Hasbro denies the remaining allegations in this paragraph.

34.     Hasbro denies the characterization of the Common Interest Agreement.   The agreement text speaks for itself.  Hasbro denies the remaining allegations in this paragraph.

35.     Admitted.

36.     Hasbro admits that the Common Interest Agreement provided for a six year term and included provisions for withdrawal but denies that the paragraph provides a complete description of the ways that the agreement could be terminated.  Hasbro denies the remaining allegations in this paragraph.

37.     Denied.  Hasbro withdrew from the Common Interest Agreement on November 12, 2021, when it provided a "Separation Agreement" to Gel Blaster.

### *Gel Blaster [Allegedly] Provides Hasbro with "Everything and Anything"*

38.     Hasbro is without information regarding what Gel Blaster believed and on that basis denies the allegations set forth in this paragraph.  Hasbro admits that Gel Blaster provided certain limited information, but denies that Gel Blaster provided "everything and anything" to Hasbro. Hasbro denies the remaining allegations in this paragraph.

### *The [Alleged] Walmart Opportunity*

39.     Hasbro admits it joined a virtual meeting with a Walmart representative.  Hasbro denies the remaining allegations of this paragraph of the complaint.

40.     Hasbro admits that it attended a virtual meeting with Walmart and Gel Blaster attendees.  Hasbro denies the remaining allegations in this paragraph.

41.     Hasbro admits it has a substantial placement of product at Walmart, including in the toy aisle.  Hasbro denies the remaining allegations of this paragraph of the complaint.

42.     Hasbro is without information regarding Walmart's opinions or primary concerns, and on that basis denies the allegations related to Walmart's beliefs.  Hasbro denies the characterizations set forth in this paragraph regarding the discussion with Walmart.  Hasbro denies the remaining allegations in this paragraph.

43.     Denied.

### *[Alleged] Gel Blaster Product Specifications*

44.     Denied.

45.     Hasbro admits that certain information was shared by Gel Blaster to try and convince Hasbro to invest in Gel Blaster.  Hasbro denies that Hasbro engineers did not know how to make blasters.  Hasbro denies that information provided was actually confidential as it was largely (if not entirely) known to the blaster industry already.  Hasbro denies the remaining allegations in this paragraph.

46.     Hasbro admits that Gel Blaster provided it with various sample products.

47.     Hasbro denies this allegation as it is unclear what is means for one company to purportedly "allow" another company to visit a third company.

48.     Hasbro denies that the identity of Gel Blaster's vendor was confidential information.  Hasbro denies the remaining allegations in this paragraph.

### *The Spin Master Patents*

49.     Hasbro admits the parties had a discussion on August 24, 2021 regarding the Spin Master patents.  Hasbro denies the remaining allegations of this paragraph of the complaint.

50.     Hasbro admits that the parties executed a Common Interest Agreement.  Hasbro admits that the parties had additional discussions after August 24, 2021.  Hasbro denies the remaining allegations in this paragraph.

51.     Hasbro admits the parties and their attorneys had a discussion on September 28, 2021.

52.     Hasbro admits Mr. Guinn and Mr. Kleinman exchanged communications regarding the Spin Master patents.   Hasbro denies the remaining allegations of this paragraph of the complaint.

53.     Denied.  Hasbro withdrew from the Common Interest Agreement on November 12, 2021, when it provided a "Separation Agreement" to Gel Blaster.

### Hasbro and Gel Blaster Decide not to Complete a Definitive Transaction.

54.     Admitted.

55.     Hasbro admits that the parties did not complete the agreement.  Hasbro admits that it suggested that the parties talk again in the future.  Hasbro lacks knowledge or information regarding how the "parting seemed to Gel Blaster" and on that basis denies it.

56.     Denied.

57.     Denied.

### Hasbro Becomes the Exclusive Licensee of the Same Patents It [Allegedly] Worked with Gel Blaster to Set Aside, Then Immediately Asserts Them Against Gel Blaster in [Alleged] Material Violation of Its Contracts.

58.     Hasbro admits it and Spin Master filed the identified Complaint in the ITC against Gel Blaster and others, including Gel Blaster's manufacturer on July 20, 2022.  Hasbro denies the remaining allegations of this paragraph of the complaint.

59.     Hasbro admits the ITC Complaint alleges that Hasbro acquired an exclusive license to the '282 and '683 patents from Spin Master.  Hasbro denies the remaining allegations of this paragraph of the complaint.

60.     Denied.

61.     Denied.

62.     Admitted.

63.     Admitted.

64.     Hasbro admits Mr. Kleinman verified the ITC Complaint on behalf of Hasbro. Hasbro denies the remaining allegations of this paragraph of the complaint.

65.     Denied.

66.     Hasbro admits that it informed certain merchants about the ITC complaint.

67.     Hasbro admits that it informed certain merchants about the ITC complaint.  Hasbro denies the remaining allegations of this paragraph of the complaint.

68.     Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

## IV.  CAUSES OF ACTION

### Count I – [Alleged] Breach of Contract (Confidentiality Agreement)

69.     Hasbro incorporates by reference its answers set forth above.

70.     Hasbro admits Gel Blaster and Hasbro executed the Confidentiality Agreement on August 20, 2021.  Hasbro denies the remaining allegations of this paragraph of the complaint.

71.     Hasbro admits that the quoted language appears in the Confidentiality Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

72.     Hasbro admits that the quoted language appears in the Confidentiality Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

73.     Hasbro admits that the quoted language appears in the Confidentiality Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

74.     Hasbro admits that the quoted language appears in the Confidentiality Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

75.     Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

76.     Denied.  Gel Blaster's complaint identifies no confidential information purportedly misused by Hasbro and Hasbro has not misused any confidential information belonging to Gel Blaster.

77.     Hasbro admits that the quoted language appears in the Confidentiality Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

78.     Hasbro admits that the Confidentiality Agreement contains this provision and that Gel Blaster's complaint purports to seek actual damages, injunctive relief, and attorneys' fees. Hasbro denies that Gel Blaster is entitled to any relief and denies any remaining assertions to the extent that there are any in this paragraph.

79.     Denied.

**Count II – [Alleged] Breach of Contract (Common Interest Agreement)**

80.     Hasbro incorporates by reference its answers set forth above.

81.     Hasbro admits Gel Blaster and Hasbro executed the Common Interest Agreement on September 27 and 28, 2021, with an effective date of August 1, 2021.  Hasbro denies the remaining allegations of this paragraph of the complaint.

82.     Hasbro admits that the quoted language appears in the Common Interest Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

83.     Hasbro admits that the pictured language appears in the Common Interest Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

84.     Hasbro admits that the quoted language appears in the Common Interest Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

85.     Hasbro admits that the quoted language appears in the Common Interest Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

86.     Hasbro admits that the quoted language appears in the Common Interest Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.

87.     Denied

88.     Denied

89.     Denied

90.     Hasbro admits that the quoted language appears in the Common Interest Agreement, but denies any remaining assertions to the extent that there are any in this paragraph of the complaint.  Hasbro denies that Gel Blaster is entitled to any relief.

91.     Denied

92.     Denied

**Count III – Texas Uniform Trade Secret Act**

93.     Hasbro incorporates by reference its answers set forth above.

94.     Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

95.     Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Denied.

## Count IV – Federal Defend Trade Secret Act

100.    Hasbro incorporates by reference its answers set forth above.

101.    Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

102.    Hasbro lacks knowledge or information sufficient to form a belief about the truth of this allegation and on that basis denies it.

103.    Denied.

104.    Denied.

105.    Hasbro admits that Gel Blaster's products are the subject of the ITC complaint and are sold in interstate commerce, and that Hasbro will sell its NERF Pro GelFire Blaster and NERF Pro GelFire Mythic Blaster in interstate commerce. Hasbro denies the remaining allegations of this paragraph of the complaint.

106.    Denied.

## Count V – [Alleged] Tortious Interference with Current and Prospective Business Relations

107.    Hasbro incorporates by reference its answers set forth above.

108.    Hasbro admits that it informed certain merchants about the ITC complaint. Hasbro denies the remaining allegations of this paragraph of the complaint.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

### Count VI – Injunctive Relief

114.    Hasbro incorporates by reference its answers set forth above.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

### V.  DEMAND FOR JURY TRIAL

119.    Hasbro demands a jury trial for all claims entitled to a jury trial.

### AFFIRMATIVE DEFENSES

Hasbro's Affirmative Defenses are listed below.  Hasbro's investigation of its defenses is continuing, and Hasbro reserves the right to amend its Answer to allege and assert any additional affirmative defenses, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case.

### FIRST AFFIRMATIVE DEFENSE

1.    Gel Blaster's claims are barred or limited by contracts between the parties.

### SECOND AFFIRMATIVE DEFENSE

2.    Gel Blaster's Complaint fails to state a claim upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

3.      Gel Blaster's claims are barred by the equitable doctrines of estoppel, waiver, or acquiescence.

### FOURTH AFFIRMATIVE DEFENSE

4.      Gel Blaster's claims are barred by preemption.

### FIFTH AFFIRMATIVE DEFENSE

5.      All conduct attributed to Hasbro in the Complaint was authorized by the terms of the Confidentiality Agreement and/or Common Interest Agreement.

### SIXTH AFFIRMATIVE DEFENSE

6.      All actions taken by Hasbro were reasonable, justified, privileged, and undertaken in good faith.

### SEVENTH AFFIRMATIVE DEFENSE

7.      Gel Blaster has not suffered any damages attributable to, or caused by, Hasbro.

### EIGHT AFFIRMATIVE DEFENSE

8.      Gel Blaster's claims for breach of contract are barred by Gel Blaster's failure to satisfy conditions precedent.

### NINTH AFFIRMATIVE DEFENSE

9.      Gel Blaster's claims for misappropriation of trade secrets are barred because they are redundant of Gel Blaster's breach of contract claims.

### TENTH AFFIRMATIVE DEFENSE

10.      Gel Blaster's claims are barred by *Noerr-Pennington* doctrine.

## **PRAYER**

Hasbro denies that Gel Blaster is entitled to any relief requested in the Prayer section of the Complaint.  To the extent any statement in that section is deemed to include any factual allegations, Hasbro denies such allegations.

Wherefore, Hasbro prays that:

1.      The Court grant judgment in Hasbro's favor and against Gel Blaster;

2.      Gel Blaster take nothing on its claims;

3.      The Court find this to be an exceptional case pursuant to 35 U.S.C. § 285 and award Hasbro their reasonable attorneys' fees; and

4.      The Court grant Hasbro all other and further relief that the Court deems just and proper.

## COUNTERCLAIMS

Subject to and without waiving any of the foregoing defenses, Hasbro asserts the following Counterclaims against Gel Blaster.

## THE PARTIES

1.      Hasbro is a Rhode Island corporation with a principal place of business at 1027 Newport Avenue, Pawtucket, Rhode Island 02861.  Hasbro is a global leader in play and entertainment products.

2.      On information and belief, based on Paragraph 4 of the Complaint, Gel Blaster is a Texas corporation with its principal place of business at 5000 Plaza on the Lake, Suite 265, Austin, Texas 78746.

## JURISDICTION AND VENUE

3.      These counterclaims arise under the patent laws of the United States, Title 35, United States Code.  The jurisdiction of this Court is proper under at least 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331 and 1338.

4.      Gel Blaster has consented to the personal jurisdiction of this Court at least by commencing this action, as set forth in its Complaint.  In addition, this Court has personal jurisdiction over Gel Blaster because, based on Paragraph 4 of the Complaint, Gel Blaster is a Texas corporation with its principal place of business in Texas.

5.      Venue for these counterclaims is proper in this District pursuant to 28 U.S.C. § 1400(b) because, based on Paragraph 4 of the Complaint, Gel Blaster is a Texas corporation.  In addition, Gel Blaster has committed acts of infringement in this District and, based on Paragraph 4 of the Complaint, has a regular and established place of business in this District.  Further, Gel Blaster waived any challenge to venue by filing this action.

## THE ASSERTED PATENTS

6.     U.S. Patent No. 8,371,282 ("the '282 patent") is titled "Soft-Projectile Launching Device." The '282 patent duly and legally issued on February 12, 2013. The '282 patent issued from and has priority to U.S. Patent Application Serial No. 12/777,134, filed on May 10, 2010. A copy of the '282 patent is attached as Exhibit 1.

7.     Spin Master, Inc., is the current valid assignee of the '282 patent. Hasbro is the exclusive licensee of the '282 patent.

8.     U.S. Patent No. 8,640,683 ("the '683 patent") is titled "Soft-Projectile Launching Device." The '683 patent duly and legally issued on February 4, 2014. The '683 patent issued from U.S. Patent Application Serial No. 13/761,082 and claims priority to U.S. Patent Application Serial No. 12/777,134, filed on May 10, 2010. A copy of the '683 patent is attached as Exhibit 2.

9.     Spin Master, Inc. is the current valid assignee of the '683 patent. Hasbro is the exclusive licensee of the '683 patent.

## FACTUAL ALLEGATIONS OF PATENT INFRINGEMENT

10.     Gel Blaster has made, used, offered to sell, and/or sold within the United States, and/or imported into the United States, at least its Gel Blaster Surge Water-Based Gellet Blaster ("Gel Blaster Surge") and Gel Blaster Starfire Water-Based Gel Bead Blaster ("Gel Blaster Starfire"), as on information and belief, other blaster products that shoot ammunition comprising hydrated super-absorbent polymer, including "XL" variants of the Gel Blaster Surge and Gel Blaster Starfire (as depicted for example, at https://gelblaster.com/products/starfire-xl and https://www.valken.com/products/gb-surge-xl-gelblaster-1) (collectively, the "Accused Products").

11.     Gel Blaster offers the Accused Products for sale within the United States at least via its website, as depicted below:



12.     Gel Blaster also offers, or contracts with third parties to offer, the Accused Products for sale in the United States through third-party websites and retailers, such as Amazon.com and Walmart.com.

13.     Gel Blaster has used the Accused Products within the United States, for example, in connection with product testing and/or creating photographs or videos of the Accused Products for promotional purposes.

19

14.     Third-party users (e.g., product reviewers and end users) have assembled and/or used the Accused Products in the United States as directed by user instructions and/or other literature included with the Accused Products.

15.     Gel Blaster has known of the Asserted Patents since at least August 24, 2021, as Gel Blaster admits in Paragraph 49 of its Complaint.

16.     Gel Blaster creates and distributes technical, marketing, sales, and product literature for the Accused Products that encourage or instruct end users to assemble and use the Accused Products.

17.     For example, Gel Blaster distributes the product literature shown below, which instructs users to submerge "Gellets" in water for at least two hours, fill a hopper with hydrated Gellets, and screw the hopper onto the top rail of the Accused Products:



18.     Gel Blaster has provided Accused Products to end users in the United States for promotion and advertising.

19.     Gel Blaster sells or offers to sell within the United States, or imports into the United States, components of the Accused Products, such as spare parts (including "fins," "tips,"

"hoppers," "feednecks," and "Gellets"), that Gel Blaster knows are especially made or especially adapted for use in the Accused Products, and not a staple article or commodity of commerce suitable for other uses due to the specific designs of the Accused Products.

<strong>Gel Blaster Starfire Launcher</strong>

20.     The Gel Blaster Starfire is a projectile launcher designed to launch ammunition called "Gellets" in free flight, as shown in the product images below (red callout boxes added):





21.    The Gel Blaster Starfire includes a feed chamber, as shown in the product images

below (red callout boxes added):





**STEP 3 - FILL YOUR HOPPER**
Fill your hopper with hydrated Gellets, make sure all water is drained from
the hopper before installing on your blaster.

**STEP 4 - INSTALL HOPPER ONTO BLASTER**
Screw the hopper into the Starfire feedneck. Then slide the feedneck onto
the top rail of the SURGE with the arrow pointing forward.

**IMPORTANT** - Make sure you slide the feedneck all the way forward until you feel
and hear a "click". Failing to do so will cause your Gel Blaster SURGE to misfire.

22.     The Gel Blaster Starfire is adapted to load Gellets from the feed chamber to a firing

position, as shown in the teardown images below (red callout boxes added):




**Gel Blaster Surge Launcher**

23.     The Gel Blaster Surge is a projectile launcher designed to launch Gellets in free

flight, as shown in the product images below (red callout boxes added):





24.    The Gel Blaster Surge includes a feed chamber, as shown in the product images

below (red callout boxes added):



**STEP 3 – FILL YOUR HOPPER**

Fill your hopper with hydrated Gellets, make sure all water is drained from the hopper before installing on your blaster.

**STEP 4 – INSTALL HOPPER ONTO BLASTER**

Screw the hopper into the feedneck. Then slide the feedneck onto the top rail of the SURGE with the arrow pointing forward.

**IMPORTANT** – Make sure you slide the feedneck all the way forward until you feel and hear a "click". Failing to do so will cause your Gel Blaster SURGE to misfire.

25.     The Gel Blaster Surge is adapted to load Gellets from the feed chamber to a firing position, as shown in the teardown images below (red callout boxes added):

 



**Gel Blaster Gellets Projectiles**

26.     Gellets are ammunition configured for use with a projectile launcher, as shown in

the product images below (red callout boxes added):







27.     Gellets are substantially spherical soft-projectiles formed from hydrated super absorbent polymer, as shown in the product images and website snippets below (red callout boxes added):








## STEP 1 – HYDRATE YOUR GELLETS™ !! IMPORTANT !!

Gellets™ must be submerged in water for at least two hours to fully expand to size. They also need to have plenty of water to absorb (this is very important) – you'll know there was plenty of water if after 2 hours the Gellets are still submerged in the water. Failing to completely hydrate Gellets will cause your Gel Blaster® to seem crappy.

**Starfire™ Glow in the Dark Gellets** are specially formulated and react differently. These Gellets, when fully hydrated, may shrink and lose their ability to glow within a few days, so only hydrate what you plan on using!

**Note:** Make sure that the Gellets are prepared in an adequate sized container. Gellets will expand 10 times their original size. Store hydrated Gellets away from the elements and direct sunlight. Standard Gellets last indefinitely when dehydrated and up to three months when submerged in water.

**YOUR STARFIRE SYSTEM REQUIRES 2-AAA BATTERIES (NOT INCLUDED)**

**HALF GALLON OF WATER MAKES 5,000 STARFIRE GELLETS™!**





SOAK FOR 2 HOURS

STANDARD GELLETS HYDRATION VIDEO

## STEP 1 – HYDRATE YOUR GELLETS™ !! IMPORTANT !!

Gellets™ must be submerged in water for at least two hours to fully expand to size. They also need to have plenty of water to absorb (this is very important) – you'll know there was plenty of water if after 2 hours the Gellets are still submerged in the water. Failing to completely hydrate Gellets will cause your Gel Blaster® to seem crappy.

**Note:** Make sure that the Gellets are prepared in an adequate sized container. Gellets will expand 10 times their original size. Store hydrated Gellets away from the elements and direct sunlight. Gellets last indefinitely when dehydrated and up to three months when submerged in water.

**ONE GALLON OF WATER MAKES 10,000 GELLETS™!**

GELLETS HYDRATION VIDEO



SOAK FOR 2 HOURS

## gellets™ INSTRUCTIONS



**GELLETS HYDRATION VIDEO**

### HOW TO HYDRATE YOUR GELLETS™

1. Pour one 10k Gellet pack (included) into a 1-gallon+ container (preferably with a lid)
2. Add 1 gallon of water and wait at least 2hrs
3. Strain your full-size Gellets™ of excess water
4. Now you're ready to go!
   **Fill your hopper and start blasting!**

### HOW TO STORE YOUR GELLETS™

Keep hydrated Gellets™ ready so you can use your Gel Blaster whenever you want! Here's how to properly store hydrated Gellets.

1. Add water to your ammo container until all Gellets are submerged
2. Seal the container with a lid
3. Store in a cool place out of direct sunlight



## What Is Gel Blaster?

When it comes to gel blasters, they are designed as projectiles for the purpose of recreation and joy. But unlike paintball and BB guns, these creative water bead guns shoot water-based gel balls or beads that are environmentally friendly, non-toxic, and non-staining.

The pellets are soft and safe, making them ideal for indoor use. And yes, gel blasters are 100% legal in the United States!

*Gel Blaster website: https://gelblaster.com/blogs/news/gel-blaster-vs-splatrball*

GelBlaster Gellets™ are small, colorful, hydrating balls made out of Super Absorbent Polymer (SAP), an all natural, non-toxic, non-irritating, starch-based material. GelBlaster Gellets™ burst on contact and immediately begin to disintegrate.

*Gel Blaster website:*
*https://gelblaster.com/products/gelblaster-gellets*

# GROW YOUR AMMO USING OUR GELLETS™

Our patented, no mess, no clean-up Gellets™ burst on impact and evaporate in 30 minutes or less. Made using Super Absorbent Polymers (SAP), an all-natural, non-toxic, water-based material, so you can blast them anywhere. Spend less time cleaning and more time having a blast!

*Gel Blaster website:*
*https://gelblaster.com/products/gel-blaster-starfire*

## HOW DO GELLETS™ WORK?

Soak our patented Gellets™ in water for just 2 hours and watch your gel pellets balloon into Gellets™. All natural, non-toxic, non-irritating, starch-based material that bursts on contact and immediately evaporates. No stains, no residue, and no mess.

*Gel Blaster website:*
*https://gelblaster.com/products/gel-blaster-starfire*

## THE ASSERTED TRADEMARKS

28.     The NERF brand is one of the most famous and well recognized brand names in the United States.

29.     Since at least as early as 1969, Hasbro, together with its predecessors in interest, has continuously marketed and sold high quality blasters under the trademark NERF.

30.     In 1969, the groundbreaking NERF ball was introduced as the "world's first official indoor ball."  Throughout the 1970s and 1980s, the NERF brand expanded to include dozens of different blasters used to play a variety of indoor and outdoor games, from baseball, basketball, and football to foam ball and water blasters.

31.     In 1992, Hasbro introduced the first NERF dart blaster.  In the years following, Hasbro continued to innovate and introduce new blasters under the NERF mark.  Hasbro used not only the NERF mark in connection with blasters, but introduced a number of NERF formative marks for use in connection with blasters, including, for example: NERF ULTRA, NERF ULTRA ONE, NERF ALPHA STRIKE, and NERF NITRO.  Collectively, the NERF, NERF ULTRA, NERF ULTRA ONE, NERF ALPHA STRIKE, and NERF NITRO marks are referred to as the "NERF Marks."

32.     Hasbro continues to expand the NERF brand and in 2022 has done so by introducing blasters that use hydrated super absorbent polymer (SAP) projectiles.

33.     In July of 2022, Hasbro announced a new blaster: the NERF PRO GELFIRE MYTHIC.



34.     The announcement of the NERF PRO GELFIRE MYTHIC was widely covered in the press with dozens upon dozens of news outlets writing stories about its release, including the VERGE, 9to5 toys, IGN, gamesradar+, CNET, and the Nerdist.

35.     The NERF PRO GELFIRE MYTHIC is currently on sale in the United States.

36.     Since the announcement and sale of the NERF PRO GELFIRE MYTHIC blaster, Hasbro has developed significant common law trademark rights in the NERF PRO GELFIRE and GELFIRE marks (collectively, the "GELFIRE Marks")

37.     Hasbro's NERF PRO GELFIRE MYTHIC blaster is sold and distributed throughout the United States and worldwide via online sales, including direct to consumers through Hasbro's websites and through third party platforms, such as Amazon.com, Target.com, and Walmart.com.  In addition, this blaster will potentially be sold and distributed throughout the United States and worldwide via brick-and-mortar stores.

38.     Hasbro advertises its products, including products bearing the NERF mark and the GELFIRE Marks, in a variety of ways, including in digital advertising and promotion on social media platforms, where Hasbro is also active in engaging with customers.

39.     In addition to its long-standing common law trademark rights dating back more than 50 years, including in connection with blasters specifically for over 30 years, Hasbro owns a number of federal trademark registrations for the NERF Marks in the United States, including:

- NERF, Reg. No. 1,418,494, covering "toy sporting equipment sold as a unit for playing indoor and outdoor games" in Class 28;

- NERF ULTRA, Reg. No. 5,928,891, covering "toy projectile shooters and accessories therefor" in Class 28;

- NERF ULTRA ONE, Reg. No. 6,191,205, covering "toy projectile shooters and accessories therefor" in Class 28;

- NERF NITRO, Reg. No. 5,491,093, covering "toy projectile shooters and accessories therefor; toy vehicles and accessories therefor; toy playsets for use with toy vehicles and toy projectile shooters" in Class 28; and

- NERF ALPHA STRIKE, Reg. No. 5,939,984, covering "toy projectile shooters and accessories therefor" in Class 28.

Collectively, the above are the "NERF Registrations".

40.     All of the NERF Registrations are valid, subsisting and in full force and effect. Further, Registration No. 1,418,494 is incontestable pursuant to 15 U.S.C. § 1065.

41.     In addition to the registrations above, on July 18, 2022, Hasbro applied to register the mark NERF PRO GELFIRE, Serial No. 97/507,124, covering "toy projectile shooters and accessories therefor" in Class 28.  Although filed based on an intent-to-use the mark, as detailed

above, the NERF PRO GELFIRE mark is in use in commerce in connection with the applied-for goods.

42.     As a result of Hasbro's investment of substantial resources in the continuous and prominent use of the NERF Marks and the GELFIRE Marks, the NERF Marks and GELFIRE Marks have become well-known and famous, and are immediately recognized and associated by consumers, the public, and the trade as identifying and distinguishing Hasbro as the exclusive source of the high-quality goods with which the NERF Marks and GELFIRE Marks are used.  The NERF Marks and GELFIRE Marks represent a significant business investment and considerable goodwill of great value to Hasbro.

43.     Hasbro carefully controls the use of its famous NERF mark, the NERF Marks, and the GELFIRE Marks and is diligent in policing infringement by third parties.

## FACTUAL ALLEGATIONS OF TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

44.     As detailed above, Hasbro possesses well-known and famous common law and registered trademark rights in the NERF mark derived from decades of continuous and prominent use of the NERF mark in connection with blasters.

45.     Gel Blaster is a competitor to Hasbro in the blaster category.

46.     Gel Blaster, without Hasbro's authorization, has been marketing and selling blasters using Hasbro's famous NERF mark and the GELFIRE Marks.

47.     With full knowledge of Hasbro's rights, both registered and in common law, Gel Blaster has used the NERF mark and the GELFIRE Marks in its own advertising, including the text that reads: "NerfPro GelFire - Nerf Pro GelFire" and "Nerf GelFire - NerfPro GelFire - Nerf Pro GelFire" (collectively, the "Infringing Marks") in the headline text of advertisements on at

least Google.com and YouTube.com.  The Infringing Marks are used to advertise and promote Gel

Blaster blasters.  Screenshots of these advertisements are provided below:

From Google.com:



From YouTube.com:



48.     Gel Blaster has willfully used the famous NERF mark and the GELFIRE Marks in connection with the Infringing Marks in order to misdirect consumers interested in purchasing a NERF branded blaster to Gel Blaster's website.

49.     From the prominent use of the famous NERF mark and the GELFIRE Marks in the Infringing Marks, a consumer interested in purchasing a blaster under the NERF Mark and the GELFIRE Marks would believe that Gel Blaster's advertisement is an advertisement and link to a Hasbro product, and that Gel Blaster itself or its product is associated with or sponsored by Hasbro. Having been confused about the advertisement and deceived by the false designation of origin, customers for Hasbro's products would be diverted away from the legitimate Hasbro products and instead to Gel Blaster products.

50.     Gel Blaster's advertisements are offered in the same channels as Hasbro's, as demonstrated by links to Hasbro's legitimate websites being displayed directly adjacent to Gel Blaster's infringing advertisements.

51.     On information and belief, Gel Blaster has used the NERF mark and the GELFIRE Marks on other websites and social media platforms without Hasbro's consent.

52.     Gel Blaster's unauthorized use of the famous NERF mark and the GELFIRE Marks, is likely to cause confusion, mistake, or deception as to the origin, source, and sponsorship of Gel Blaster's products.

53.     Gel Blaster's actions have injured and are likely to continue to injure Hasbro by creating a risk that consumers will wrongly or mistakenly associate Gel Blaster with Hasbro.

54.     Given Gel Blaster's willful actions, the likelihood of confusion that Gel Blaster has caused in the marketplace is harmful to consumers, Hasbro, and Hasbro's reputation.

## <u>COUNTS</u>

### COUNT I – INFRINGEMENT OF THE '282 PATENT

55.     Hasbro incorporates by reference the allegations set forth above.

56.     On information and belief, Gel Blaster has directly infringed, literally or under the doctrine of equivalents, at least claims 1 and 8 of the '282 patent by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Products, either as imported or when assembled and/or used as directed.

57.     On information and belief, third-party retailers have directly infringed, literally or under the doctrine of equivalents, at least claims 1 and 8 of the '282 patent by offering to sell and/or selling Accused Products to and in retail stores in the United States and on websites accessible from within the United States.

58.     On information and belief, third-party users of Accused Products (e.g., product reviewers and end users) have directly infringed, literally or under the doctrine of equivalents, at least claims 1 and 8 of the '282 patent by assembling and/or using Accused Products in the United States as directed by user instructions and/or other literature included with the Accused Products.

59.     On information and belief, Gel Blaster has known of the '282 patent and the foregoing infringements since at least August 24, 2021.

60.     On information and belief, Gel Blaster has knowingly induced, and continues to knowingly induce, directly infringing acts by others with specific intent to encourage infringement. For example, by creating and distributing technical, marketing, sales, and product literature for the Accused Products, Gel Blaster actively induces end users' direct infringement by encouraging or instructing them to assemble and use the Accused Products in the United States.  As another example, through contractual relationships, Gel Blaster actively induces third-party retailers to offer to sell and sell the Accused Products in the United States.  As yet another example, Gel Blaster actively induces others to use the Accused Products in the United States by providing Accused Products to end users for promotion and advertising.  Gel Blaster knows, or should have known, that these induced acts directly infringe at least claims 1 and 8 of the '282 patent because of, for example, its analysis of the patent in the fall of 2021 and the infringement allegations and evidence provided in this Complaint, the Complaint Hasbro and Spin Master filed against Gel Blaster in the ITC, and notice letters to Gel Blaster.

61.     On information and belief, Gel Blaster has contributed, and continues to contribute, to the foregoing infringement by others by offering to sell, selling, and importing in the United States components of the Accused Products (e.g., "fins," "tips," "hoppers," "feednecks," and Gellets), which constitute a material part of the invention of the '282 patent, knowing the same to

be especially made or adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

62.     Gel Blaster's infringement is willful.

## COUNT II – INFRINGEMENT OF THE '683 PATENT

63.     Hasbro incorporates by reference the allegations set forth above.

64.     On information and belief, Gel Blaster has directly infringed, literally or under the doctrine of equivalents, at least claim 1 of the '683 patent by making, using, offering to sell, and/or selling within the United States, and/or importing into the United States, the Accused Products, either as imported or when assembled and/or used as directed.

65.     On information and belief, third-party retailers have directly infringed, literally or under the doctrine of equivalents, at least claim 1 of the '683 patent by offering to sell and/or selling Accused Products to and in retail stores in the United States and on websites accessible from within the United States.

66.     On information and belief, third-party users of Accused Products (e.g., product reviewers and end users) have directly infringed, literally or under the doctrine of equivalents, at least claim 1 of the '683 patent by assembling and/or using Accused Products in the United States as directed by user instructions and/or other literature included with the Accused Products.

67.     On information and belief, Gel Blaster has known of the '683 patent and the foregoing infringements since at least August 24, 2021.

68.     On information and belief, Gel Blaster has knowingly induced, and continues to knowingly induce, directly infringing acts by others with specific intent to encourage infringement. For example, by creating and distributing technical, marketing, sales, and product literature for the Accused Products, Gel Blaster actively induces end users' direct infringement by encouraging or instructing them to assemble and use the Accused Products in the United States.  As another

example, through contractual relationships, Gel Blaster actively induces third-party retailers to offer to sell and sell the Accused Products in the United States.  As yet another example, Gel Blaster actively induces others to use the Accused Products in the United States by providing Accused Products to end users for promotion and advertising.  Gel Blaster knows, or should have known, that these induced acts directly infringe at least claim 1 of the '683 patent because of, for example, its analysis of the patent in the fall of 2021 and the infringement allegations and evidence provided in this Complaint, the Complaint Hasbro and Spin Master filed against Gel Blaster in the ITC, and notice letters to Gel Blaster.

69.     On information and belief, Gel Blaster has contributed, and continues to contribute, to the foregoing infringement by others by offering to sell, selling, and importing in the United States components of the Accused Products (e.g., "fins," "tips," "hoppers," "feednecks," and Gellets), which constitute a material part of the invention of the '683 patent, knowing the same to be especially made or adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

70.     Gel Blaster's infringement is willful.

### COUNT III – FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1)(a))

71.      Hasbro incorporates by reference the allegations set forth above.

72.     As described above, Hasbro owns the distinctive and federally registered NERF Marks in connection with blasters.

73.     Hasbro's federal registrations for the NERF Registrations, one of which is incontestable, are in full force and effect, and Hasbro owns all right, title, and interest in them.

74.     Hasbro's ownership and exclusive use in commerce of the NERF Marks are superior to and significantly predate any use of the NERF mark by Gel Blaster.

75.     Gel Blaster has used the Infringing Marks, which prominently feature the famous NERF mark, as trademarks in commerce in connection with the advertising, distribution, offering for sale, and/or sale of blasters.

76.     Gel Blaster's use of the Infringing Marks in interstate commerce, as described above, constitutes trademark infringement in violation of 15 U.S.C. § 1114(1)(a) because it is without Hasbro's consent and is likely to cause confusion, to cause mistake, and to deceive as to the origin or source of Gel Blaster's goods, and/or to cause consumers to believe, mistakenly, that Gel Blaster and/or Gel Blaster's blasters are part of, or sponsored, licensed, endorsed, or approved by, or otherwise affiliated with, Hasbro.

77.     Gel Blaster's unlawful acts, which were committed and continue to be committed with knowledge of Hasbro's prior registered rights in the NERF Marks, are knowing and willful.

78.     Upon information and belief, as a direct and proximate result of Gel Blaster's willful trademark infringement and unfair competition, Gel Blaster's acts have caused and will continue to cause great harm and irreparable injury to Hasbro, including undermining consumers' association of the NERF Marks with Hasbro, and Hasbro has been and will be continued to be damaged, in the form of monetary and reputational damage, in an amount presently unknown but to be determined at trial.

79.     Upon information and belief, Gel Blaster has realized unjust profits, gains, and advantages from its unlawful actions.

80.     Gel Blaster's conduct is causing and, unless Gel Blaster is restrained, will continue to cause, Hasbro to suffer irreparable injury for which Hasbro has no adequate remedy at law.

## COUNT IV – FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

81.     Hasbro incorporates by reference the allegations set forth above.

82.     As described above, Hasbro owns valid and enforceable common law rights in the famous NERF mark and the GELFIRE Marks in connection with blasters.

83.     Hasbro's ownership and exclusive use in commerce of the common law rights in the famous NERF mark and the GELFIRE Marks are superior to and significantly predate any use of Gel Blaster's use of the Infringing Marks.

84.     Gel Blaster has used the Infringing Marks as trademarks in commerce in connection with the advertising, distribution, offering for sale, and/or sale of blasters.

85.     Gel Blaster's use of famous NERF mark and the GELFIRE Marks in connection with the Infringing Marks, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1) because it is without Hasbro's consent and is likely to cause confusion, to cause mistake, and to deceive as to the origin or source of Gel Blaster's goods, and/or cause consumers to believe, mistakenly, that Gel Blaster and/or Gel Blaster's blasters are part of, or sponsored, licensed, endorsed, or approved by, or otherwise affiliated with Hasbro.

86.     Gel Blaster's unlawful acts, which were committed and continue to be committed with knowledge of Hasbro's prior common law rights in the famous NERF mark, the NERF Marks, and the GELFIRE Marks are knowing and willful.

87.     Upon information and belief, Gel Blaster has realized unjust profits, gains, and advantages from its unlawful actions.

88.     Upon information and belief, as a direct and proximate result of Gel Blaster's violations of 15 U.S.C. § 1125(a)(1), Hasbro has been and will continue to be damaged in an amount to be determined at trial.

89.     Gel Blaster's conduct is causing and, unless Gel Blaster is restrained, will continue to cause, Hasbro to suffer irreparable injury for which Hasbro has no adequate remedy at law.

## COUNT V – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## UNDER TEXAS COMMON LAW

90.     Hasbro incorporates by reference the allegations set forth above.

91.     As described above, Hasbro owns common law rights in the famous NERF mark, the NERF Marks, and the GELFIRE Marks in connection with blasters.

92.     Hasbro's ownership and exclusive use in commerce of the common law NERF Marks and the GELFIRE Marks, including in Texas, are superior to and significantly predate any use of the Infringing Marks by Gel Blaster.

93.     Gel Blaster's use of the Infringing Marks as trademarks in commerce in connection with blasters is without Hasbro's consent and is likely to cause confusion, to cause mistake, and to deceive as to the origin or source of Gel Blaster's goods, and/or to cause consumers to believe, mistakenly, that Gel Blaster and/or Gel Blaster's blasters are part of, or sponsored, licensed, endorsed, or approved by, or otherwise affiliated with, Hasbro.

94.     Gel Blaster's unlawful activities constitute willful trademark infringement and unfair competition in violation of the common law of the State of Texas.

95.     Upon information and belief, Gel Blaster has realized unjust profits, gains, and advantages from its unlawful actions.

96.     Upon information and belief, as a direct and proximate result of Gel Blaster's willful trademark infringement and unfair competition, Hasbro has been and will continue to be damaged in an amount to be determined at trial.

97.     Gel Blaster's conduct is causing, and unless Gel Blaster is restrained, will continue to cause, Hasbro to suffer irreparable injury for which Hasbro has no adequate remedy at law.

## PRAYER FOR RELIEF

Wherefore, Hasbro prays that:

1.      The Court grant judgment that Gel Blaster has infringed the Asserted Patents;

2.      The Court grant judgment that Gel Blaster's infringement of the Asserted Patents has been willful;

3.      The Court award Hasbro compensatory damages as a result of Gel Blaster's infringement of the Asserted Patents, together with interest, including post-judgment interest, and costs, and in no event less than a reasonable royalty, and an accounting;

4.      The Court find this to be an exceptional case pursuant to 35 U.S.C. § 285 and award Hasbro their reasonable attorneys' fees;

5.      The Court grant judgment that Gel Blaster has infringed Hasbro's registered  NERF Marks;

6.      The Court grant judgment that Gel Blaster's trademark infringement of the NERF Marks has been willful;

7.      The Court grant judgment that Gel Blaster infringed Hasbro's common law rights in the NERF Marks and the GELFIRE Marks;

8.      That the Court grant an injunction permanently enjoining and restraining Gel Blaster, its officers, employees, agents, attorneys, and all persons acting by , through, or in concert with any of them from:

    a.  using the NERF Marks, the GELFIRE Marks, and any confusingly similar mark, word, name, or designation as a trademark, service mark, or trade name in a manner that is likely to cause consumer confusion pursuant to 15 U.S.C. § 1116;

b.  doing any act likely to cause confusion or mistake or to deceive consumers into believing, mistakenly, that Gel Blaster's goods are sponsored, licensed, endorsed, or approved by Hasbro, or are otherwise affiliated with Hasbro; and

c.  otherwise infringing the NERF Marks and the GELFIRE Marks, or otherwise competing unfairly with Hasbro;

9.  The Court award Hasbro its actual damages and Gel Blaster's profits resulting from the infringement of the NERF Marks and the GELFIRE Marks, pursuant to 15 U.S.C. § 1117, in an amount to be determined at trial;

10.  The Court declare this an exceptional case in light of Gel Blaster's knowing and willful infringement of the NERF Marks and the GELFIRE Marks;

11.  Hasbro's damages be trebled;

12.  The Court award Hasbro all costs, including attorneys' fees allowable by statue and/or other law; and

13.  The Court grant Hasbro all other and further relief that the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Hasbro demands a trial by jury.

Dated: October 11, 2022

Respectfully Submitted,

FISH & RICHARDSON P.C.

By:  */s/ David M. Hoffman*
    David M. Hoffman
    Texas Bar No. 24046084
    hoffman@fr.com
    111 Congress Avenue, Suite 810
    Austin, TX 78701
    Tel: (512) 472-5070
    Fax: (512) 320-8935

    David Barkan (*admitted in W.D. Tex*)
    California Bar No. 160825
    barkan@fr.com
    500 Arguello Street, Suite 400
    Redwood City, CA 94063
    Tel: (650) 839-5070
    Fax: (650) 839-5071

    Alexander Pechette (pending *pro hac vice*)
    pechette@fr.com
    One Marina Park Drive
    Boston, MA 02210-1878
    Tel: (617) 542-5070
    Fax (542-8906

**COUNSEL FOR DEFENDANT AND COUNTER-PLAINTIFF, HASBRO, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on October 11, 2022, and was served via CM/ECF on all counsel of record.

*/s/ David M. Hoffman*
David M. Hoffman