IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| GEL BLASTER, INC., F/K/A GEL BLASTER, LLC, § § § *Plaintiff-Counter-Defendant*, § § v. § § HASBRO, INC., § § *Defendant-Counter-Plaintiff*. § § | C.A. No. 1:22-cv-00828-LY |

**[PROPOSED] ORDER FOR PRELIMINARY INJUNCTION**

On this day, came before the Court for consideration Gel Blaster, Inc.'s Motion for Preliminary Injunction. Having considered the motion by Gel Blaster, Inc. ("Gel Blaster"), any responses by Hasbro, Inc. ("Hasbro") in response to the same, any replies in support of the same, and any additional evidence submitted by either Gel Blaster or Hasbro (collectively, the "Parties") in support or in opposition of the same, the Court is of the opinion that Gel Blaster's Motion for Preliminary Injunction should be GRANTED. Upon consideration of the evidence and papers, the Court finds as follows:

1.      Gel Blaster has demonstrated a substantial likelihood of success on the merits of its breach of contract and misappropriation of trade secrets claims—the latter claim being brought under the Texas Uniform Trade Secret Act ("TUTSA") and the Defend Trade Secrets Act ("DTSA"). Gel Blaster has also demonstrated that it will likely suffer an irreparable injury if a preliminary injunction does not issue, and that its injury outweighs any threatened harm to Hasbro. Lastly, Gel Blaster has demonstrated that its proposed preliminary injunction, which is limited to enjoining the sale of products containing Gel Blaster's confidential business information and trade secrets, will not disserve the public interest.

2. First, Gel Blaster has shown a substantial likelihood of success on its breach of contract claim.

3. Gel Blaster and Hasbro are signatories to a Mutual Confidentiality Agreement ("Confidentiality Agreement"), entered into on August 20, 2021. The Confidentiality Agreement contains secrecy obligations that prevent the Parties from utilizing the other Party's confidential information for any purpose other than contemplating a potential business partnership between the two, or without the other Party's prior authorization.

4. Pursuant to the Confidentiality Agreement, Gel Blaster shared with Hasbro certain confidential business information, including its proprietary Physical Firing Mechanism. Gel Blaster has demonstrated a substantial likelihood that Hasbro has misappropriated its confidential business information, by—at a minimum—replicating and using Gel Blaster's Physical Firing Mechanism in Hasbro's Nerf Pro GelFire MYTHIC blaster. Gel Blaster has further demonstrated this unauthorized use likely constitutes a breach of contract.

5. Second, Gel Blaster has also demonstrated a substantial likelihood of success on its trade secret misappropriation claim, under both TUTSA and DTSA.

6. At a minimum, Gel Blaster's Physical Firing Mechanism likely constitutes a trade secret. Gel Blaster has shown that the Physical Firing Mechanism is not known outside of Gel Blaster's business, and the company strictly limits access to its internal documents relating to the Physical Firing Mechanism, requires contractors to abide by secrecy obligations, and has not yet even incorporated the Physical Firing Mechanism into its own products. The Physical Firing Mechanism product designs, schematics, and all related documents are kept on Gel Blaster's password-protected server, to which only a handful of its employees and executives have access.

7. Further, Gel Blaster derives independent value from the Physical Firing Mechanism and its continued secrecy. Gel Blaster has expended significant resources to develop the Physical Firing Mechanism, which it considers to present a more streamlined and cost-effective method for controlling the variable fire mode of its blasters. To further demonstrate its value, Gel Blaster has shown that it intends to use the Physical Firing Mechanism in upcoming products and has demonstrated that no other blasters currently properly on the market use a firing mechanism like Gel Blaster's Physical Firing Mechanism.

8. Next, Gel Blaster has demonstrated that Hasbro likely misappropriated its Physical Firing Mechanism through a breach of the Parties' confidential relationship. Pursuant to the Confidentiality Agreement, Hasbro had an independent obligation to preserve the secrecy of Gel Blaster's Physical Firing Mechanism, which is part of Gel Blaster's confidential business information, and to refrain from any unauthorized use of the same. Gel Blaster has shown that, even if Hasbro initially lawfully acquired the Physical Firing Mechanism as part of the Parties' then-ongoing discussions, its subsequent unauthorized implementation of Gel Blaster's Physical Firing Mechanism into its own MYTHIC blaster likely constitutes a misappropriation of Gel Blaster's trade secret. That Gel Blaster's Physical Firing Mechanism is currently used by Hasbro's MYTHIC blaster, in direct competition with Gel Blaster's own products, further demonstrates improper use.

9. Further, Gel Blaster has shown that it will be irreparably harmed absent a preliminary injunction in this case. Hasbro has admitted as much through its Confidentiality Agreement with Gel Blaster. By signing onto the Confidentiality Agreement, Hasbro agreed to its terms—including a provision that acknowledged that monetary damages would be insufficient to compensate the non-breaching party (in this case, Gel Blaster) and entitled the same to seek

injunctive relief. Additionally, Gel Blaster and Hasbro are presently direct competitors . Moreover, absent a preliminary injunction, Gel Blaster will likely lose more than the sales of its blasters to Hasbro's MYTHIC; it will likely lose additional sales of its "tag-along" products—like its blaster ammunition, which Hasbro uses also for its MYTHIC—as well. The loss of potential customers and tag-along sales that Gel Blaster is currently suffering as a result of Hasbro's ongoing misappropriation and breach is unquantifiable and irreparable.

10.     Lastly, Gel Blaster's injury is not outweighed by the threatened harm that Hasbro may suffer from a preliminary injunction. The MYTHIC blaster is one subset—gel-based blasters—of the Nerf brand, which in turn is one of many brands owned by Hasbro. By its own admission, Hasbro is a massive company that earns billions of dollars in revenue each year. By contrast, Gel Blaster's sole business is in the sale of its gel-based blasters and accompanying products. In light of the existential threat to Gel Blaster, any lost profits for Hasbro do not outweigh the issuance of a preliminary injunction in this case. Nor does a preliminary injunction disserve the public interest in preserving and protecting Gel Blaster's confidential business information, including its trade secrets.

In light of its factual determinations, the Court ORDERS as follows:

The Court hereby preliminarily ENJOINS Hasbro, Inc., its agents, servants, employees, and all others in active concert or participation with Hasbro, Inc., from the continued or further breach of the Confidentiality Agreement and misappropriation of Gel Blaster, Inc.'s trade secrets by Hasbro, Inc. through the manufacture and sale of Hasbro, Inc.'s MYTHIC blaster and any related or future products whose design contains or uses misappropriated Gel Blaster confidential business information or trade secrets.

This Preliminary Injunction shall take effect immediately and shall remain in effect pending trial in this matter or further order of this Court.

Gel Blaster, Inc. is directed to file proof of bond, in the amount of $ _____, within thirty (30) days of this Order. The bond shall serve as security for all claims with respect to the Preliminary Injunction, and any additional injunctive relief ordered by the Court in this matter.

*SO ORDERED.*

_____
HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE