IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GEL BLASTER, INC., F/K/A | § | |
| GEL BLASTER, LLC, | § | |
| | § | |
| *Plaintiff-Counter-Defendant*, | § | |
| v. | § | C.A. No. 1:22-cv-00828-LY |
| | § | |
| HASBRO, INC., | § | |
| | § | |
| *Defendant-Counter-Plaintiff*. | § | |
| | § | |

## GEL BLASTER'S POST-HEARING OUTLINE

**Overview**: The Court heard testimony that Hasbro immediately put the very same individuals in charge of developing its Mythic blaster as it had just used to review Gel Blaster's most confidential information and secret CAD files. Hasbro's witnesses admitted that the firing mechanism in Hasbro's Mythic is identical in form and function to the secret firing mechanism developed by Gel Blaster. This was only shared with Hasbro under the protection of a Mutual Confidentiality Agreement. Hasbro presented no evidence that it independently developed the Mythic's firing mechanism without the use of Gel Blaster's confidential information, admitted that the confidential information remained in the minds of the Mythic team while they rushed a product to market featuring an identical firing mechanism, and conceded that none of the blasters Hasbro's counsel showed the Court played any role in the development of the Mythic—but in fact, only became known to the witnesses for purposes of this litigation.  In short, Gel Blaster has established a high likelihood of success on the merits of its claims and that it is being irreparably harmed in the marketplace by Hasbro's misappropriation of Gel Blaster's trade secrets and breach of its agreements.

I.      **Gel Baster Will Succeed on the Merits – Breach of the Confidentiality Agreement**

- Hasbro does not contest that the parties duly executed the Mutual Confidentiality Agreement (the "MCA") prior to Gel Blaster sharing its information with Hasbro. Hearing Transcript (Jan. 24, 2023) ("Tr.") at 42:24–43:21 (Guinn); 204:15–19 (Kleinman). Hasbro also does not dispute that the MCA's non-use and non-disclosure obligations are still ongoing.

- Hasbro may use Gel Blaster's confidential information "solely for the purpose of evaluating a [p]ossible [t]ransaction and for no other purpose." Plaintiff Ex. (hereafter "P Ex.") 2 at 1.

- Under the MCA, Hasbro received and reviewed Gel Blaster's CAD files for an unreleased model of Gel Blaster's Surge blaster, which included its secret and previously-unreleased PFM, such that Hasbro's conversation at Defendant's Exhibit 36 "came about because Hasbro noticed a difference between the CAD file they received and the actual prototype of the product that was available." Tr. at 75:07–17 (Guinn).

- "Core members" of the Hasbro / Gel Blaster deal worked on the Mythic. Tr. at 206:10–207:22, P Ex. 19 (Kleinman). Mr. Tino, a developer and designer, was involved in the development of the potential "Nerf Gel Blaster" and the Mythic, and was responsible for providing "due diligence from an engineering perspective." *Id.* at 171:03–04, 172:12–14, 176:15–24 (Tino). He admitted to seeing Gel Blaster's confidential information, such as its CAD drawings for the PFM, in October 2021 and conceded that he could not "physically remove [the confidential information] from [his] mind." *Id.* at 176:25–177:01. He was never expressly told by Hasbro that Gel Blaster's information was to be treated as confidential. *Id.* at 172:15-19.

II.     **Gel Blaster Will Succeed On the Merits – Trade Secret Misappropriation**

      A.      **Gel Blaster's PFM is a Trade Secret**

- The PFM is an accurate, cost-efficient, and space-efficient firing mechanism that reduces computation on the blaster's circuit board. It has two primary benefits: (1) "a simple method of being able to count individual shots or be able to have a signal for each shot. It uses a single sensor that's very cost-effective, and it doesn't require any extra components that are engaging with the plunger system," Tr. at 82:09–24 (Cline), and (2) "it takes that processing power that's used right now to do the timing algorithm off of the processor so the processor can now be doing [other functions]." *Id.* at 53:01–54:08 (Guinn).

- The PISCA and PISCA Switch allow for more engaging gameplay, such as "a game where everybody's only allowed to shoot 100 rounds before their blaster shuts off . . . mimic magazine capacities. . . [or] have a handicap for [] leveling the playing field." Tr. at 83:10–84:14 (Cline).

- Gel Blaster has never publicly disclosed the PFM, saving it for an upcoming product model— currently codenamed the Surge Pro and set for release by the end of 2023. Tr. at 36:08–12 (Guinn); 99:14–17 (Cline). Hasbro's access to Gel Blaster's CAD files is "like walking into a house and saying go build that exact house and you have no plans versus here [are] all the architectural drawings, now go build the house." *Id.* at 63:01–09 (Guinn). Gel Blaster's CAD files are not publicly available, and "[t]he only time [the PISCA and PISCA Switch] been used

together in the public space is in the Gelfire Mythic." *Id.* at 75:19–22; 140:16–17 (Cline). And Gel Blaster limited access to its PFM to a select few engineers and executives, who required their own passwords and usernames to access a secure server. *Id.* at 54:09–55:03 (Guinn).

- The PISCA and PISCA Switch are both "required for the functionality of [the PFM] to work." Tr. at 101:01–04 (Cline). Someone opening up one of Gel Blaster's current products, which include a PISCA but not the PISCA Switch, would not see the PFM because "there's no indication [in the current Surge] that there's a physical switch that would be contacted in the cycling of the blaster . . . [the current Surges uses] a timing method." *Id.* at 141:13–143:06.

## B.     Hasbro Acquired Gel Blaster's PFM Through Improper Means

- Hasbro received physical samples, schematics, and CAD files—including Gel Blaster's PFM. Tr. at 172:20–173:19 (Tino). Gel Blaster also provided Hasbro access to its engineering department, product development department, and its manufacturing team. It shared information "in almost every way that you can share information, maybe other than fax." *Id.* at 42:10–16, 47:19–48:05 (Guinn).

- Gel Blaster shared "anything and everything . . . literally everything." Tr. at 43:16–44:01, 45:09–21 (Guinn). Hasbro does not contest that it had confidentiality and non-use obligations with respect to Gel Blaster's PFM. Hasbro never expressly informed the development team that Gel Blaster's PFM—or any material provided by Gel blaster—was subject to confidentiality obligations. *Id.* at 172:15–173 (Tino).

## C.     Hasbro Used the PFM—Specifically, the PISCA and PISCA Switch—Without Gel Blaster's Authorization

- The Mythic released in late September 2022. Tr. at 93:18–22 (Cline). Gel Blaster received a final Mythic product at that time, and spent several weeks analyzing its contents. *Id.* at 93:23–96:03. The Mythic's firing mechanism is identical in form and function to the secret firing mechanism developed by Gel Blaster and shared with this Hasbro team under the protection of the MCA. *Id.* at 98:01–98:24; 182:07–16 (Tino). The Mythic uses the PISCA and PISCA Switch found in Gel Blaster's PFM. *Compare* P Ex. 24–25 *with* P Ex. 26–28.

- The Mythic's original CAD drawing did not include a PISCA and PISCA Switch, and Hasbro presents no further evidence to demonstrate how the PISCA and PISCA Switch ended up in the final Mythic product, which significantly differs in structure from the original Hasbro CAD drawings presented. Tr. at 157:05–08, 159:11–18, 186:01–13 [Defendant's Ex. 300] (Tino).

- Hasbro specifically inquired about the presence of the PISCA Switch, when it noticed that in "the electronics schematic, [there was] a switch present in that schematic that was not in the physical sample." Tr. at 75:07–17, 171:08–19 (Tino). Mr. Tino admitted that Hasbro changed the orientation of the PISCA Switch to allegedly increase its durability over "designs where you can perpendicularly impact [the] switch." *Id.* at 170:04–24.

- Contrary to the arguments made in Hasbro's briefing, Mr. Tino admitted the Nerf Stampede was not considered during development of the Mythic's firing mechanism. Tr. at 175:25–

176:02 (Tino). Nor were the Stampede modifications by Nerf Haven user "darthskids" considered during Mythic development. *Id.* at 175:12–19. In fact, Mr. Tino admitted that he had never seen the Stampede modification until preparing for his testimony. *Id.* at 175:05–11. No blaster identified by Hasbro at the hearing or in its briefing contains a PISCA and PISCA Switch. *Id.* at 89:17–91:08, 14–21 (Cline); 187:04–18, 188:05–189:03, 190:05–19 (Tino).

- The YouTube video from "Engineerable," intended as a hearing "gotcha," was revealed to have been released after the Mythic (with PFM) was already on the market "which shows the functionality of a PISCA and a PISCA Switch with its entirety . . . [a]fter seeing that, this would be an easier step to make for sure." Tr. at 105:04–17 (Cline).

## III.    Gel Blaster Is Being Irreparably Harmed

- Through the misappropriation of Gel Blaster's confidential information and trade secrets, Hasbro had access to "the culmination of many, many, many years of engineering know-how and user experience design that went into the product that . . . [Gel Blaster] was sharing with [Hasbro]." Tr. at 48:15–49:01 (Guinn). Hasbro and Gel Blaster agreed that "money damages would not be a sufficient remedy for any breach of [the MCA]." P. Ex. 2 at 3.

- "[I]t would be very difficult to even determine what those monetary damages would be if . . . innovations were taken from us and made to . . . look like they were Hasbro's." Tr. at 45:02–05 (Guinn). The impact of Hasbro's misappropriation on the future of Gel Blaster's products is also "too difficult to calculate because of how fast this market is growing." *Id.* at 56:03–06.

- Hasbro does not contest that its competing products affect the sale of Gel Blaster's "tag-along" products, including, among other things, through brand loyalty: "if somebody makes a purchase decision to buy a NERF-branded product, they're more likely to buy their refill ammo, they're more likely to buy their face masks, they're more likely to buy their accessories." Tr. at 57:01–20 (Guinn). Hasbro's misappropriation of the PFM also dilutes Gel Blaster's image and reputation as a market innovator. *Id.* at 33:23–34:19.

## IV.    Gel Blaster's Harm Outweighs Any Harm to Hasbro and Favors the Public Interest

- Gel Blaster depends entirely on the sale of its gel-based products, whereas gel-based products form only a small percentage of Hasbro's Nerf products. Tr. at 32:09–33:02, 57:23–25 (Guinn). Hasbro's GelFire Legion blaster, for example, would be unaffected by the injunction – preserving Hasbro's capacity to sell gel products. *Id.* at 211:18–23 (Kleinman).

- Mr. Kleinman admitted that situations where a retailer has to replace shelf space from one product with another product is "pretty standard practice." Tr. at 201:19–22 (Kleinman).

## V.    A $1 Million Maximum Bond Suffices

- Gel Blaster cannot afford a $20 million bond, as it had a $2.5 million net income in 2022, and Hasbro knows that. Tr. at 58:04–59:07 (Guinn).

Date:  February 3, 2023

Respectfully submitted,

KELLEY DRYE & WARREN LLP

  */s/ William C. Petit*
William C. Petit
Attorney-In-Charge
Texas Bar No. 24042289
Lana M. Rowenko
Texas Bar No. 24094929
Ivan F. Morales
Texas Bar No. 24118751
515 Post Oak Blvd., Suite 900
Houston, Texas 77027
Telephone: (713) 355-5000
Facsimile: (713) 355-5001
wpetit@kelleydrye.com
lrowenko@kelleydrye.com
imorales@kelleydrye.com

Scott W. Doyle (admitted *pro hac vice*)
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC  20007
Telephone: (202) 342-8845
sdoyle@kelleydrye.com

CORNELL SMITH MIERL BRUTOCAO
BURTON, LLP

Andrew J. Broadaway
1607 West Avenue
Austin, Texas 78701
Telephone: (512) 328-1540
Facsimile: (512) 328-1541
abroadaway@cornellsmith.com

**ATTORNEYS FOR PLAINTIFF-
COUNTER-DEFENDANT
GEL BLASTER, INC.**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on February 3, 2023, the foregoing document was filed with the Court through the CM/ECF system and a copy thereof was served via the CM/ECF system upon all counsel of record.

                     */s/ William C. Petit*
                       William C. Petit